STATE ex rel. C. A. FAWCETT,
*Plaintiff and Appellant*

vs.

THE BOARD OF THE COUNTY COMMISSIONERS
OF THE COUNTY OF ALBANY, WYOMING, E.
FITCH, E. L. KNIGHT, and GEORGE DODGE,
constituting the members of said Board,
*Defendants and Respondents.*

(No. 2639; July 13th, 1954; 273 Pac. (2d) 188)

For the plaintiff and appellant the cause was submitted upon the brief of Maurer & Garst of Douglas, Wyoming, and oral argument by Mr. Joseph Garst.

For the defendants and respondents the cause was submitted upon the brief of Gordon W. Davis, County and Prosecuting Attorney, Albany County, and Robert W. Costin, Deputy County and Prosecuting Attorney, Albany County, of Laramie, Wyoming, and oral argument by Mr. Davis.

## OPINION

RINER, Justice:

This litigation grew out of an attempt by the Legisla-

ture of the State of Wyoming to detach certain lands from the County of Albany, and incorporate them in and as part of Converse County by altering the boundaries of these counties as set forth and described prior to the year 1953 in Section 26-102 of W.C.S., 1945, for Albany County, and Section 26-106 of W.C.S., 1945, for Converse County. The action of the Legislature in the premises, and the subject of controversy here, appears in Ch. 137 of the Session Laws of Wyoming, 1953, being inserted in said session laws as "Original House Bill No. 142."

The action was entitled in the District Court of Albany County and was brought on the relation of C. A. Fawcett as plaintiff against the Board of the County Commissioners of the County of Albany, hereinafter usually called the "Board" or the "defendants," the constituent members of the Board being E. E. Fitch, L. Knight, and George Dodge. The suit was one for a writ of mandamus and in substance as regards its initiatory pleading is to the following effect: After alleging in Paragraph I thereof that the three persons last named are the "duly elected, qualified, and acting members of and constitute the Board of County Commissioners of Albany County, Wyoming, a legally constituted County of the State of Wyoming;" and in Paragraph II that the petitioner "was and is at all times herein mentioned a resident and qualified elector of the territory hereinafter mentioned proposed to be cut off of Albany County, Wyoming, and added to Converse County, Wyoming, by the Legislative Act to which reference is herein made;" stated in Paragraph III:

"(At the solicitation of petitioner and others similarly situated) The legislature of the State of Wyoming, during its 1953 session, passed an act and the same was on February 20, 1953 approved and became a law designated as Chapter 137, Session Laws of Wyo-

ming, 1953, whereby a certain part of Albany County, Wyoming, was proposed to be cut off from that county and annexed to Converse County, Wyoming, (because the residents of the territory proposed to be cut off were isolated from their county seat by a high mountainous barrier and during inclement weather, impassable roads, which necessitated a long, time-consuming, expensive and round-about trip whenever they desired to go to the county seat for the transaction of business or participate in their county government, and as a resident of said territory and a qualified elector in said territory, your petitioner, along with others similarly situated, is deeply interested in the proposed change.)"

On motion of the defendants, the District Court struck out the words of said paragraph enclosed in parenthesis; and plaintiff was allowed to remove them by lining them out. Paragraph IV of plaintiff's petition avers that by said Act the Legislature correctly defined the boundaries of said Albany County and also that portion thereof proposed to be cut off from that County and annexed to Converse County but in redefining the boundaries of Converse County, a portion formerly a part of said Converse County was omitted, but that the omitted portion does not in any way affect the boundaries of Albany County as redefined, nor does it render a true description of the territory proposed to be cut off incapable of a true definition.

Paragraph V reads verbatim as follows:

"Among other things provided by said Act were that Converse County was to assume and be holden for an equitable proportion of the indebtedness of Albany County so reduced; and, that the proposed changes in the boundaries of said Counties were not to become effective until a majority of the qualified electors within the territory proposed to be cut off from said Albany County approved said proposed change by a favorable vote at an election, the time of which was to be fixed by resolution of the Board of County Commissions of Albany County, but not later than December 31, 1953."

Paragraph VI of said pleading upon information and belief of petitioner states that said Board fixed the time for such an election on September 29, 1953, but on discovering the mistake in defining the Converse County boundaries in said Act considered the Act to be unlawful and ineffective and refused to hold said election and now refuses to fix the time for and hold an election by which the approval or disapproval of the qualified electors of the territory proposed to be cut off from Albany County can be determined.

Paragraph VII asserted that it is the duty of the defendants to call said election as directed by the provisions of the Act of the Legislature aforesaid and the petitioner is without remedy except by interposition of the Court.

The prayer of this pleading was that "a Writ of Mandamus against Defendants be granted" commanding them to fix the time for and hold an election in the territory proposed to be cut off from Albany County by said Act in accordance with that law and for all other proper relief. This pleading was duly verified by counsel "as he verily believes"; and it was filed in the District Court of Albany County on October 27, 1953.

Upon this filing being made, the District Judge on October 27, 1953, also ordered the issuance of an alternative writ of mandamus directing the defendants, to fix a time not later than December 31, 1953, for, and hold, a special election as sought by plaintiff's petition or show cause on November 3, 1953, at 1:30 P. M. why they had not done so.

On November 3, 1953, the defendants filed their answer wherein they admit the allegations of Paragraph I of said petition but deny each and every other allegation contained in Paragraph II to VII, inclusive,

in said pleading. In the remainder of their answer, designated sub-division "II," they allege in substance:

(1) That the Legislature of this State during its 1953 session passed an Act approved February 20, 1953, and designated as Ch. 137, Session Laws of Wyoming, 1953;

(2) that by its terms said Ch. 137 amended and re-enacted Section 26-102, W.C.S., 1945, defining the boundaries of Albany County, Wyoming, and amending and re-enacting Section 26-106 of W.C.S., 1945, defining the boundaries of Converse County, Wyoming;

(3) That the Title of said Ch. 137, Session Laws of Wyoming, 1953, reads verbatim as follows: "To amend and re-enact Section 26-102, Wyoming Compiled Statutes, 1945, defining the boundaries of Albany County, Wyoming; to amend and re-enact Section 26-106, Wyoming Compiled Statutes, 1945, defining the boundaries of Converse County, Wyoming; and providing for Converse County to assume an equitable proportion of the indebtedness of Albany County so reduced."

(4) That Section 1 of Ch. 137 defines Albany County's boundaries;

(5) That Section 2 of said Ch. 137 defines Converse County's boundaries;

(6) That it is not possible by tracing the description of the lands described in Sections 1 and 2 of said Ch. 137 to determine what lands, if any, are to be detached from Albany County and attached to Converse County;

(7) That by comparing the description of the lands as described in Sections 1 and 2 of said Ch. 137 with a description of lands described in Sections 26-102 and 26-106, W.C.S., 1945 it is possible to determine that certain lands previously contained in Albany County

were deleted and inserted as a portion of the description of Converse County; that the lands thus affected are described as follows:

"Commencing at the north quarter corner of section two (2) township twenty-eight (28) north, range seventy-one (71) west; thence south through the center of section two (2) to the south quarter corner of said section two (2); thence west along section line to north-west corner of section eleven (11), township twenty-eight (28) north, range seventy-one (71) west; thence south along section line to the southwest corner of section eleven (11), township twenty-eight (28) north, range seventy-one (71) west; thence west along section line to the north quarter corner of section fifteen (15), township twenty-eight (28) north, range seventy-one (71) west; thence south to the south quarter corner of section twenty-two (22), township twenty-eight (28) north, range seventy-one (71) west; thence west along section line to northwest corner of section twenty-seven (27), township twenty-eight (28) north, range seventy-one (71) west; thence south on section line to the southwest corner of section ten (10), township twenty-seven (27) north, range seventy-one (71) west; thence west along section line to the northwest corner of section sixteen (16), township twenty-seven (27) north, range seventy-one (71) west; thence south along section lines to the southwest corner of section twenty-one (21), township twenty-seven (27) north, range seventy-one (71) west; thence west along section lines to south quarter corner of section ninteen (19), township twenty-seven (27) north, range seventy-two (72) west; thence north along center section lines to the center of section nineteen (19), township twenty-seven (27), north, range seventy-two (72) west; thence west along center section lines to southeast corner of the southwest one-quarter ($\frac{1}{4}$) northeast one-quarter ($\frac{1}{4}$) of section twenty-one (21), township twenty-seven (27) north, range seventy-three (73) west; thence north on subdivision line to northeast corner of northwest one-quarter ($\frac{1}{4}$) northeast one-quarter ($\frac{1}{4}$) of section twenty-one (21), township twenty-seven (27) north, range seventy-three (73) west; thence west along section line to

southeast corner of section seventeen (17), township twenty-seven (27) north, range seventy-three (73) west; thence north along section line to northeast corner of section twenty-nine (29), township twenty-eight (28) north, range seventy-three (73) west; thence east along section line to southeast corner of section twenty-two (22), township twenty-eight (28) north, range seventy-three (73) west; thence north to northeast corner of section fifteen (15) township twenty-eight (28) north, range seventy-three (73) west; thence east along section line to the southeast corner of section eleven (11), township twenty-eight (28) north, range seventy-three (73) west; thence north along section lines to northeast corner of section two (2), township twenty-eight (28) north, range seventy-three (73) west; thence east along the township line between townships twenty-eight (28) and twenty-nine (29) north, to the north quarter corner of section two (2), township twenty-eight (28) north, range seventy-one (71) west, the place of beginning, all in Albany County, Wyoming."

(8) That in Section 26-106, W.C.S., 1945, prior to amendment the description of boundaries of Converse County after being traced to the southeast corner of section thirty-one (31), township twenty-nine (29) north, range seventy (70) west, continues thus:

"Thence north along section lines to the northeast corner of section six (6), township thirty (30) north, range seventy (70) west; thence east along the township line between townships thirty (30) and thirty-one (31) north, to the southeast corner of section thirty-three (33), township thirty-one (31) north, range sixty-seven (67) west; thence north along the section lines to the point of beginning."

But the description of the boundaries of Converse County as set out in Section 2 of Ch. 137 after being traced to the southeast corner of section thiry-one (31), township twenty-nine (29) north, range seventy (70) west, continued as follows: "thence north along section lines to the point of beginning."

(9) That said change of description as alleged in above paragraph eight divided Converse County by detaching therefrom these lands:

"Beginning at the east one-quarter corner of section twenty-eight (28), township forty-one (41) north, range sixty-seven (67) west; thence west through the centers of sections and through one-quarter corners to the west one-quarter corner of section twenty-nine (29), township forty-one (41) north, range seventy (70) west; thence south along section lines to the southwest corner of section thirty-two (32), township forty-one (41) north, range seventy (70) west; thence east along the tenth (10th) standard parallel to the northwest corner of section five (5), township forty (40) north, range seventy (70) west; thence south along section lines to the southwest corner of section thirty-two (32), township thirty-seven (37) north, range seventy (70) west; thence east along the ninth (9th) standard parallel to the northwest corner of section five (5), township thirty-six (36) north, range seventy (70) west; thence south along section lines to the southwest corner of section thirty-two (32), township thirty-three (33) north, range seventy (70) west; thence east along the eighth (8th) standard parallel to the northwest corner of section five (5), township thirty-two (32) north, range seventy (70) west; thence south along section lines to the southwest corner of section thirty-two (32), township thirty-one (31) north, range seventy (70) west; thence east along the township line between townships thirty (30) and thirty-one (31) north to the northeast corner of section six (6), township thirty (30) north, range seventy (70) west; thence east along the township lines between townships thirty (30) and thirty-one (31) north, to the southeast corner of section thirty-three (33), township thirty-one (31) north, range sixty-seven (67) west; thence north along section lines to the point of beginning."

(10) That said Ch. 137 did not provide for the attachment of said lands so cut off to any other county nor for an election to be held by the qualified electors

of said lands thus cut off as required by Art. 12, Section 2, of the Constitution of this State;

(11) That Sections 1 and 2 of said Ch. 137 are so related that they must be construed together;

(12) That Ch. 137 is violative of Art 3, Section 24, of the Constitution of Wyoming in that the Title of said Act does not express the purpose of detaching the lands described in paragraph nine, supra, from Converse County;

(13) That said Ch. 137 violates Art 12, Sections 1 and 2, of the Constitution of Wyoming because it fails to include within the boundaries of the several counties of this State all of the lands in the State of Wyoming;

(14) That Ch. 137 violates Art 3, Section 27, of the State Constitution because it is a special law regulating county affairs and does not by its terms provide by general law for the changing of county lines:

(15) That Ch. 137 violates Art. 12, Section 2, of the Wyoming Constitution because it is a special law and not a general law providing for the changing of county lines.

The answer prays that plaintiff takes nothing and that the court render such other proper judgment as to the Court may seem meet, the premises considered.

The plaintiff's reply to this answer denies each allegation thereof except as admitted by plaintiff's petition.

On November 3, 1953, the defendants filed a motion requesting the District Court of Albany County to reserve and send to the Supreme Court of Wyoming the five constitutional questions raised by defendants' answer as set forth above.

On November 3, 1953, also, counsel for both parties filed an agreed written stipulation establishing the facts "and all the facts upon which the case shall be tried" and stating that the facts set out in said stipulation are *"true,"* to wit:

(1) That the 1953 session of the Wyoming Legislature passed what became Ch. 137, Session Laws of Wyoming, 1953, and this law was approved February 20, 1953, and became a law of this State;

(2) That said Ch. 137 by its terms cut off some territory from Albany County and annexed it to Converse County;

(3) That the method used by the Legislature to accomplish this result was to define the boundaries of each of Albany and Converse Counties; that the boundaries of Albany County as defined by this Act are the same as the preceding law which defined them except for that part of Albany County proposed to be cut off and annexed to Converse County;

(4) That the north and west boundaries of Converse County as defined by said Act are the same as defined by the previous Act, Section 26-106, W.C.S., 1945, that the south boundary of Converse County is defined as including that portion of Albany County proposed to be cut off from Albany County, and in defining the remainder of the south boundary of Albany County and the east boundary thereof, the Legislature left out a part of the State of Wyoming which previously was included in Converse County;

(5) That the Act further provides that Converse County shall assume and be holden for an equitable proportion of the indebtedness of Albany County so reduced;

(6) That the proposed changes shall not become effective until approved by the qualified electors of the territory proposed to be cut off from Albany County at an election, the time thereof to be set by the Board sometime prior to December 31, 1953;

(7) That the date of said election was once set by said Board but called off and that said Board has refused to reset a date for such an election;

(8) That plaintiff is a qualified elector residing within the territory proposed to be cut off from Albany County and is interested in having the election called as the Act provides.

It is also stipulated that this cause shall be submitted to the Court without a jury upon the petition verified and filed, the order for, and alternative writ of mandamus of the petitioner, and the pleading of the defendants. This stipulation was dated October 30, 1953.

On November 6, 1953 on motion of the defendants and on the Court's own motion, it was "THEREFORE ORDERED, ADJUDGED, AND DECREED BY THE COURT" that "this cause be reserved and sent to the Supreme Court of the State of Wyoming for its decision, and the Court asks for decision thereon as to the constitutionality of Chapter 137 of the Session Laws of 1953 and asks the Supreme Court to decide the following questions, to-wit:" (here are set out the constitutional questions suggested in and set out by defendants' answer, supra).

The record sent to the Supreme Court by the Clerk of the District Court of Albany County consisted of petition, order granting alternative writ of mandamus, motion to quash, stipulation, motion to strike, order sustaining motion to strike, alternative writ of man-

damus (together with copy of petition and order granting alternative writ of mandamus, answer, reply, motion, stipulation, and order reserving consitutional questions to the Supreme Court of the State of Wyoming; this record was sent to this Court on November 9, 1953. On November 25, 1953, without waiting for the mandate of this Court on this constitutional matter to be returned to it, the District Court of Albany County undertook to enter a judgment which, omitting recitals, reads:

"It appearing that further appearances and proceedings are not required in the District Court prior to issuance of Judgment and Decree, inasmuch as all facts have heretofore been stipulated, and the Court being informed and advised and having heard argument, finds:

"(1)  In accordance with the law applicable in this case, i.e.,
A Court should, if possible, give effect to every part of a description of land, and in so doing, permit monument lines or points to control over courses or calls.
the words 'north along section lines' in the last clause of Section 2, Chapter 137 of the Session Laws of Wyoming, 1953, should be stricken.

"(2)  Under the interpretation given in paragraph (1) hereof, said statute describes the boundaries of Converse County, Wyoming, in such a manner as to cut off all of the lands previously in Converse County lying east of:
A line running directly from the southeast corner of Section 31, Township 29 North, Range 70 West, to the east one-quarter corner of Section 28, Township 41 North, Range 67 West, the point of 'Beginning'.

"(3)  Said Chapter 137, Session Laws of Wyoming, 1953, is special Legislation.

"(4)  Said Chapter 137, Session Laws of Wyoming, 1953, is void in that it violates the sections of the Constitution of Wyoming following: Article

3, Sections 24 and 27; Article 12, Sections 1 and 2.

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED, that Plaintiff take nothing by reason of the petition heretofore filed herein and the Defendants have their costs.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the Writ of Mandamus be denied."

To this judgment plaintiff excepted and has sought to bring the cause here by direct appeal.

On December 22, 1953, the Clerk of this Court prepared and sent to the District Court of Albany County the mandate of the Supreme Court of Wyoming on reserved questions aforesaid, which, omitting recitals, reads as follows:

" . . . the case having been duly argued and taken under advisement, and it appearing that the purpose of the legislative act was to take a portion of Albany county and transfer it to become a part of Converse county, and it further appearing that the east boundary of the intended Converse county has been inadequately described; if it may be said to be described at all, since the east line is not closed, so that under Section 2 of the legislative act in question, it is impossible to determine what lands are included in Converse county and inasmuch as it appears that the portion intended to be a part of Converse county has not in fact been made so, and thus the legislative act would wholly fail of its purpose and would be void unless the inadequate description above mentioned may be corrected by judicial construction, and if void, it would be useless to consider any constitutional questions submitted, and inasmuch as the court has frequently held that a matter of statutory construction must in the first instance be determined by the trial court, this court is of the opinion that the present proceeding herein must be and is dismissed, and the case is remanded to the District Court of Albany county for its determination of the meaning of the legislative act in question and for such further proceeding as may be deemed proper. See State ex rel.

v. Jones, 62 Wyo. 61, 161 Pac. (2d) 135; Roberts v. Rock Springs, 52 Wyo. 89, 68 Pac. (2d) 891; State ex rel. vs. Continental Oil Co., 48 Wyo. 152, 43 Pac. (2d) 686; State v. Smart, 22 Wyo. 154, 136 Pac. 452."

It should be noted that Section 3-5503 of Art. 55, W.C.S., 1945, indicating what shall be done in the matter of reserved constitutional questions to this Court from the District Courts of the State and "remanding causes back to district court," reads:

"Upon the hearing of such cause in the supreme court said court may remand the same, together with the original papers, to the district court for further proceedings, and the clerk of the supreme court shall certify the order of that court to the clerk of the district court, who shall immediately enter the same upon the journal of said district court, and when so entered such order shall stand as the order of said district court."

It will be recalled that the order of the District Court in this matter directed that *"this cause be reserved and sent to the Supreme Court of the State of Wyoming for its decision,"* (italics supplied); and the order of this Court on remand directs that:

" . . . the case is remanded to the District Court of Albany county for its determination of the meaning of the legislative act in question and for such further proceeding as may be deemed proper."

In this connection, it should be mentioned that 3 C.J. 1252, Section 1366, speaking of the transfer of jurisdiction from the trial court to the appellate court on the appeal of a cause, states that:

"Jurisdiction of the cause is not transferred to the appellate court but remains in the trial court until the appeal or proceeding in error is perfected in accord- —ance with the statutory provisions on the subject. On the other hand as soon as the appeal or proceeding in error is perfected, the jurisdiction of the appellate court attaches, and that of the trial court ceases,

as far as the subject matter of the appeal or proceeding in error is concerned."

and the same text, 4 C.J. 1208, Section 3256, citing many cases, says that:

"It is a general rule that, in order to reinvest the lower court with jurisdiction after the rendition of judgment on appeal, there should be a mandate or other order of remand issued by the appellate court."

5 C.J.S. 1487, Section 1958, also says that:

"It is a general rule that, in order to reinvest the lower court with jurisdiction after the rendition of judgment on appeal, there should be a mandate or other order of remand issued by the appellate court." (Citing a number of cases.)

In State ex rel. Keefe vs. Jones, 62 Wyo. 61, 161 P 2d 135, cited in the mandate in the instant case, as set forth above) this Court pointed out that:

"In State v. Kelley et al., 17 Wyo. 335, 98 P. 886, 889, a case involving procedure under the statutes above referred to, this court pointed out that, 'It is a uniform rule that courts do not pass upon the constitutionality of a statute unless the necessity therefor in the case pending clearly appears (Cooley Const. Lim., § 163).'"

The other cases called to the attention of the District Court by the mandate aforesaid all make it clear that the constitutional question or questions submitted here must be of such a nature and so vital that there will be nothing more for the District Court to determine in order to dispose of the case; in other words, that Court must dispose of all preliminary matters, such as questions of statutory construction and factual questions, before this Court should be asked to determine constitutional problems in the case. This makes it reasonably clear that when a case comes here on reserved constitutional questions, the jurisdiction of the District Court is concluded for the time being as in ordinary

appeal cases until the mandate from this Court is sent down to the trial court. If that were not so, the District Court could not intelligently or properly dispose of the litigation wherein the constitutional questions arise. It is our understanding of the usual practice, therefore, that, until the mandate of the Appellate Court is received by the District Court, that Court withholds the entry of a judgment. In the case at bar, the mandate of this Court was not issued until December 22, 1953. The judgment appealed from herein was entered, as we have seen, on the 24th day of November 1953, at a time when the case was still in this Court. That judgment was, it seems to us, entered when the District Court had no jurisdiction to act; and its action was in consequence entirely void.

Even if we were to assume that the District Court did have power to act, the findings upon which the judgment is based are erroneous.

In 50 Am. Jur. 219, Section 231, the text states:
"It is a general rule that the courts, in the interpretation of a statute, may not take, strike, or read anything out of a statute, or delete, subtract, or omit anything therefrom. To the contrary, it is a cardinal rule of statutory construction that significance and effect should, if possible, be accorded to every word, phrase, sentence, and part of an act. However, there are cases in which words of a statute are so meaningless or inconsistent with the intention of the legislature otherwise plainly expressed in the statute, that they may be rejected as surplusage, and omitted, eliminated, or disregarded."

And the following section of the same text (Section 232) points out that:

"Courts will not, as a general rule, undertake a correction of legislative mistakes in statutes. This principle is adhered to notwithstanding the fact that the court may be convinced by extraneous circumstances that the legislature intended to enact something very dif-

ferent from that which it did enact. The question is not what the general assembly intended to enact, but what is the meaning of that which it did enact."

The same text (50 Am. Jur.) also tells us (Section 472, pp. 484-85, listing an extensive number of supporting decisions, that:

"In the enactment of statutes reasonable precision is required. Indeed, one of the prime requisites of any statutes is certainty, and legislative enactments may be declared by the courts to be inoperative and void for uncertainty in the meaning thereof. This power may be exercised where the statute is so incomplete or so irreconcilably conflicting, or so vague or indefinite, that the statute cannot be executed and the court is unable, by the application of known and accepted rules of construction, to determine what the legislature intended with any reasonable degree of certainty."

As the Supreme Court of Minnesota in State v. Industrial Tool & Die Works, 220 Minn. 591, 21 N.W. 2d 31, 38, remarked:

"The interpretation sought by the defendant in the instant case would bring about an absurd and unreasonable result and limit the application of the act to a very narrow field not at all consistent with the objectives to be attained. We find nothing here to justify a construction contrary to the presumption that the legislature did 'not intend a result that is absurd, impossible of execution, or unreasonable.' "

In Kelleher v. French, 22 F. 2d 341, 346, a three-judge court sitting in the District Court of the Western District of the State of Virginia declared that:

"It is well settled that, when the language of a statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for resorting to interpretation and construction. The statute must be given its plain and obvious meaning . . . . " (Citing many cases.)

And also that:

"And this rule is adhered to, even though the court may think from extraneous circumstances that the Legislature intended to enact something different from what it did enact."

This last mentioned decision was affirmed by the Supreme Court of the United States in 278 U.S. 563, 49 Sup. Ct. 35, 73 L.Ed. 507.

Similarly, the Supreme Court of Pennsylvania in Farmers-Kissinger Market House Co. v. City of Reading, 310 Pa. 493, 165 Atl. 398, 400, remarked that:

"It is an established proposition that 'the intention and meaning of the legislature must primarily be determined from the language of the Statute itself, and not from conjecture aliunde. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning. This principle is to be adhered to notwithstanding the fact that the court may be convinced by extraneous circumstances that the legislature intended to enact something very different from that which it did enact.' "

When we scrutinize the judgment attempted to be adopted in the case at bar and quoted above, we find that the Court directed that the words in Ch. 137, Section 2, at the end thereof, (the last clause of said Section 2) "north along section lines . . . should be stricken." This attempted judgment also ruled that the said statute (Ch. 137, Session Laws of Wyoming, 1953):

"Under the interpretation given in paragraph (1) hereof, said statute describes the boundaries of Converse County, Wyoming, in such a manner as to cut off all of the lands previously in Converse County lying east of:

A line running directly from the southeast corner of Section 31, Township 29 North, Range 70 West, to the east one-quarter corner of Section 28, Township 41 North, Range 67 West, the point of 'Beginning'." The consequences of such a ruling would be to fail to properly close the eastern boundary of Converse County in accord with its long years existent description; to exclude a portion of said County and not unite it with any portion of the State of Wyoming; to take a portion of Platte County and unite it with Converse County and to leave an ambiguous and uncertain description of the eastern boundary of Converse County; to do all these things regardless of the Title of Ch. 137 aforesaid, and the obvious intention of the 1953 Legislative bodies.

We are obliged to conclude that the 1953 chapter 137 session law is now in such a situation that it is beyond the power of the Courts of this Commonwealth to correct and remedy; that the matter should be resubmitted to the incoming Legislature of this State so that proper boundaries may be established for Converse County in accord with the certain and definite intentions of the lawmaking body.

The appeal herein must accordingly be dismissed with instructions to the District Court of Albany County to dismiss plaintiff's action and for such other proceedings as may be in accord with law.

Appeal dismissed with instructions.

BLUME, C. J., AND HARNSBERGER, J, concur.