NORTHERN UTILITIES, INC., Northern Utilities Division of Kansas–Nebraska Natural Gas Company, Inc., Northern Gas Company, and Northern Gas Division of Kansas–Nebraska Natural Gas Company, Inc., Appellants (Petitioners),

v.

PUBLIC SERVICE COMMISSION of Wyoming, Appellee (Respondent).

No. 5294.

Supreme Court of Wyoming.

Oct. 10, 1980.

Wm. Bryce Arendt, Wm. H. Brown and Claude W. Martin (argued), Casper, for appellants (petitioners).

John D. Troughton, Atty. Gen., Thomas J. Carroll, III, Senior Asst. Atty. Gen., Natural Resources Division and Steven R. Shanahan, Asst. Atty. Gen. (argued), Cheyenne, for appellee (respondent).

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

The district judge dismissed as moot appellants' (Northern's) Petition for Review of orders of the appellee Public Service Commission (PSC) suspending temporary tariffs filed by appellants in connection with applications for new increased rates for natural gas supplied to its customers pending the PSC's investigation, hearing

and decision [1] on the ground that no applications were pending before the PSC in that they had been rejected for filing.

The appellants state the issues to be:

1. "Whether the court below erred in recognizing as valid the action of the Commission taken during the time that the reviewing court had exclusive jurisdiction of the case?"

2. "Whether the court below erred in refusing to order the Commission to certify and transmit the *whole record* to the district court?" (Emphasis in original.)

The PSC contends that the issues are:

1. "Whether an order of the PSC pursuant to W.S. 37–3–106(c) suspending an application for temporary rate increase is an appealable order under Rule 1.05, Wyoming Rules of Appellate Procedure."

2. "Whether a 'Petition for Review' of a PSC order suspending an application for interim rate relief deprives the PSC of jurisdiction from entering an order rejecting for filing the appellant's permanent rate increase applications which are the basis for the temporary rate increase applications."

3. "Whether a 'Petition for Review' of a PSC order suspending an application for interim rate relief deprives the PSC of jurisdiction from entering an order rejecting for filling the appellants' Application for Interim Rate Relief, when such rejection is based upon and enforces a prior existing order of the PSC which the appellants have ignored or defied."

4. "Whether the district court erred in denying appellants' 'Application to have the Record Certified and Transmitted to the District Court', when such application was made after the District Court had entered its final order on appellants' 'Petition for Review' and at the same time as appellants were perfecting their appeal to the Supreme Court."

Northern argues:

1. "The suspension of a change in tariff rate proposed under § 37–3–106(d) W.S. (1977) [2] is a 'final decision ... or such other agency action or inaction' within the meaning of § 9–4–114(a) [W.S. 1977] [3] such that it is subject to judicial review." (Bracketed footnote markers, footnotes and other material added.)

---

**1.** Section 37 3 106(c), W.S.1977:

"Whenever there is filed with the commission by any public utility any application or tariff proposing a new rate or rates, the commission may, either upon complaint or upon its own initiative, initiate an investigation, hearing, or both, concerning the lawfulness of such rate or rates. *Pending its decision thereon, the commission may suspend such rate or rates, before they become effective* but not for a longer initial period than six (6) months beyond the time when such rate or rates would otherwise go into effect. If the commission shall thereafter find that a longer time will be required, the commission may extend the period of suspension for an additional period or periods not exceeding in the aggregate, three (3) months." (Emphasis added.)

**2.** Section 37 3 106(d), W.S.1977:

"The public utility may file an application requesting, and the commission may order such suspended rate or rates or any portion thereof to be put into effect at any time, in which event the commission may require a bond which shall secure a refund to persons entitled thereto of the amount, if any, finally determined to be excessive. The application and the bond in terms, amount and sureties

shall be subject to the commission's approval."

**3.** Section 9 4 114(a), W.S.1977:

"Subject to the requirement that administrative remedies be exhausted and in the absence of any statutory or common law provision precluding or limiting judicial review, *any person aggrieved or adversely affected in fact by a final decision of an agency* in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, *is entitled to judicial review* in the district court for the county in which such administrative action or inaction was taken, or in which any real property affected by such administrative action or inaction is located, or in the event no real property is involved, in the district court for the county in which the party aggrieved or adversely affected by the administrative action or inaction resides or has its principal place of business. The procedure to be followed in such proceeding before the district court shall be in accordance with rules heretofore or hereinafter adopted by the Wyoming supreme court." (Emphasis added.)

2. "The institution of proceedings seeking judicial review of an order of an administrative agency deprives the agency of jurisdiction over the matters under review and invests the district court with exclusive jurisdiction thereof."

PSC counters:

1. "An order issued by the PSC pursuant to W.S. 37–3–106(c) [see fn. 1] is not an appealable order."

2. "The PSC retained jurisdiction over the general rate increase application, and no 'Stay of Enforcement' order prevented the PSC from continuing to process the interim and permanent applications."

3. "The PSC retained jurisdiction to enforce its prior order concerning filing."

4. "A petitioners' complaint that a state agency has failed to certify to the District Court the complete record on a 'Petition for Review', pursuant to Rule 12.07, W.R.A.P., [4] must be brought before the District Court has entered an order on the petition, and not as the petitioner is perfecting an appeal to the Supreme Court." (Footnote marker and footnote added.)

We will affirm.

Appellants, who we refer to collectively as Northern, are four separately certificated public utilities, each operating under a separate certificate of public convenience and necessitȳ issued by the PSC.[5] Northern, on December 3, 1979, filed four "permanent" applications, one for each of the four appellants, seeking approval of new tariff schedules which were attached. On December 4, 1979, the PSC, by four orders, respectively, suspended the effective date for the six–month period authorized by § 37–3–106(c) (see fn. 1).[6]

Additionally, on December 3, 1979, Northern filed four separate applications, one for each appellant, with the PSC requesting that if the "permanent" tariffs were suspended, a portion, according to tariff schedules attached, be placed in effect immediately subject to refund pending a hearing and decision by the PSC. These are referred to as "temporary" applications for an interim rate. On December 14, 1979, the PSC, by four orders, respectively, "suspended" the effective date of the "temporary" tariffs for six months.

On January 11, 1980, Northern petitioned the district court for review of the PSC orders "suspending" the "temporary" tariffs. Concurrently, Northern filed a Motion for an Order of the District Court to Stay Enforcement of the Orders of the Public Service Commission of Wyoming, dated De-

4. Rule 12.07, W.R.A.P.:

"Within thirty (30) days after the service of the petition, or within further time allowed by the court, the agency shall transmit to the reviewing court the original or a certified copy of the entire record of the proceedings under review. The record in a contested case shall consist of the matter required by section 7(m) of the Wyoming Administrative Procedure Act [§ 9-4 107(m)]. To the extent that any matter so required was not preserved by the agency, and there is no record thereof, the court may take evidence of the matter. The record in all other cases shall consist of the appropriate agency documents reflecting the agency action and the basis thereof. By stipulation of all parties to the review proceedings, the record may be shortened. Any party unreasonably refusing to stipulate to limit the record may be taxed by the court for the additional cost. The court may require or permit subsequent additions or corrections to the record. A record remanded by a court to an agency for any reason or purpose may be recalled by the

remanding court as necessary upon its own motion (sua sponte)."
(Only as a matter of information, this rule was amended effective July 1, 1980, subsequent to the appeal in this case.)

5. Northern Utilities, Inc., Certificate No. 9359, is a transmission system company serving both the Riverton Lander service area and the Casper service area. Northern Utilities Division of Kansas Nebraska, Certificate No. 9636, is a distribution company which serves the Riverton Lander service area and the Casper service area. Northern Gas Division of Kansas Nebraska, Certificate No. 9638, is a distribution company servicing the Laramie Rawlins service area. Kansas- Nebraska Natural Gas Co., Inc. owns all of the capital common stock in Northern Utilities, Inc. and Northern Gas Company, Certificate No. 9491.

6. On December 21, 1979, the PSC again by identical orders suspended the permanent tariffs to correct docket numbers erroneously assigned.

cember 14, 1979, "suspending" the temporary rates which, if granted, would have the effect of a preliminary injunction placing the "temporary" rates into effect subject to refund.[7] The response of the PSC was its filing on January 30, 1980 of a Motion to Dismiss on the ground that the matter was moot because *on the date of the PSC's motion in the district court* it had denied the applications for "temporary" tariffs and had rejected for filing both the "temporary" and "permanent" applications. On *the same date as the motion was filed*, a hearing was conducted on Northern's Motion for Order to Stay Enforcement. Following that hearing, the district court entered its Order Granting Motion to Dismiss. The order stated in part:

"The Court finds that a decision upon the merits of this case would be ineffectual as the Public Service Commission *has rejected* the *application* of the Petitioners *for* an *interim rate increase.* Said rejection supercedes [sic] the Respondent's suspension orders making a challenge to the Suspension Orders moot. *Belondon v. State,* 379 P.2d 828, 829 (Wyo., 1963). *Cheever v. Warren,* 70 Wy. 296, 249 P.2d 163, 167 (1952)." [8] (Emphasis added.)

7. Rule 12.05, W.R.A.P.:
"Filing of the petition does not itself stay enforcement of the agency decision. The reviewing court may order a stay upon appropriate terms. If the stay involves an order preventing an agency or another party from committing or continuing an act or course of action, the provisions of Rule 65, W.R.C.P., relating to injunctions shall apply."

8. The two cases cited in the court's order of dismissal hold that when no judgment rendered can be carried into effect the cause is moot and will not be considered.

9. The PSC's order in pertinent part:
"3. *The Commission's investigation shows* that K N's general and interim applications are filed on a separate basis in violation and contravention of the Commission's orders in Docket Nos. 9359 sub 12, 9359 sub 13, 9491 sub 8, 9636 sub 6 & 7, and 9638 sub 5 (hereinafter referred to as the 1978 orders), which found that:
"(a) the 'separation' of the K-N 'affiliates and divisions for rate making purposes is ungainly for determining overall rate base, net revenues and rate of return', and 'K N should in all future (general) rate increase applications include a complete total North-

The basis for the PSC's rejection of Northern's applications for permanent and interim rate increases was that in 1978 after hearing on Northern's last general increase applications, a portion of the PSC's order entered at that time required the Northern companies to make a consolidated filing of future requests for a rate increase.[9] The PSC by rejection of Northern's four separate applications for a general rate increase and rejection and denial of the four separate applications for an interim rate increase was seeking to enforce its 1978 order, which it contends was defied by Northern again filing and docketing with the PSC separate applications for rate increases: one for each of the utilities, seeking "permanent" rate increases, and one for each of the utilities seeking "temporary" increases. We do not, in this appeal, consider the propriety of this action by the PSC.

The PSC claims that it had authority to do so under its Rule 104(a):

"a. All applications, petitions, formal complaints, motions or other communications should be addressed to the Commis-

ern systemwide rate base, net revenues and rate of return case.';
"(b) 'K N's rate case filing improperly excludes from this rate case, investment for - and net revenues from natural gas utility service provided to industrial consumers.'; and
"(c) 'Since the K N acquisition of the Northern operations, their reserve problems have unavoidably become a K-N company-wide consideration.'
"4. These filing requirements were not challenged by K N in its appeal of the 1978 orders, and remain in full force and effect pursuant to the decision of the Seventh Judicial District Court dated November 30, 1979.
"5. K N's general rate filing is deficient and incomplete and should be rejected pursuant to Section 104a. of the Commission's rules, pending compliance with the filing requirements of the Commission's 1978 orders.
"6. K N's interim rate increase Application is defective in the same manner as the general rate Applications, and provides no reasonable basis for determining the K N's total earnings picture for exercise of the Commission's discretion under W.S. 37-3-106."

sion and should designate the Commission docket number if known. The person filing or communicating should state his address and the party he represents. Any filing must be accompanied by appropriate fees as required by law. *If the Commission is of the opinion that any matter tendered for filing is deficient or incomplete, the Commission may decline to accept the matter as filed and shall advise the person filing where the deficiency lies.* The date of receipt of a filing by the Commission and not the date of deposit in the mails is the receipt or filing date for all purposes in these rules." (Emphasis added.)

■ Northern takes the view that once proceedings are instituted seeking review of an order of the administrative agency, the agency loses its jurisdiction over the matters under review while simultaneously the district court acquires exclusive jurisdiction. Therefore, the PSC was without jurisdiction to reject Northern's filings. We acknowledge that this is generally true. *State ex rel. Fawcett v. Board of County Com'rs of Albany County*, 1954, 73 Wyo. 69, 273 P.2d 188. However, as will be explained, this case does not fit within that rule.

We do not have before the court in this case the question of whether or not it was error on the part of the PSC to reject the filings as being outside its statutory or rule–making authority or otherwise improper to do so. It is our understanding that a separate appeal to the district court from the rejection of Northern's filings is pending. The fact remains, for the purposes of this appeal, that because of the rejection by the PSC, we are only considering and deciding the narrow issue of mootness arising out of the dismissal of the appeal by the district judge.

To summarize the rate change procedure: a public utility may charge its rates only as set forth in new tariffs and schedules as filed with the PSC, § 37–3–102, W.S.1977. Such rates must be "just and reasonable," § 37–3–101, W.S.1977. A change in rates can be made by filing with the PSC the "application or tariff" containing the new rates, § 37–3106(c), W.S.1977, (see fn. 1) with notice to the PSC given thirty days before the effective date of the change, § 37–3–106, W.S.1977. The PSC may conduct an investigation or hearing, or both, concerning the "just and reasonable" nature of the new rates, § 37–3–106(a) and (c) and § 37–2–203(a), W.S.1977. Pending such decision, the PSC may suspend the effective date of the rates for up to nine months, § 37–3–106(c), (see fn. 1) provided that the PSC may, upon proper application, allow the rates or any portion thereof to become effective upon furnishing of bond conditioned on refund in event the rates are not approved, § 37–3–106(d) (see fn. 2).

■ The December 4, 1979 orders of the PSC suspending the "permanent" rate applied for by Northern were *not* appealed in this case, by the filing of a Petition for Review. The only orders appealed by the filing of a Petition for Review were the December 14, 1979 orders of the PSC "suspending" the interim rate increase applied for by Northern. The net effect was that the applications for "permanent" increases and the orders suspending the new rates therein requested were still pending before the PSC for processing and were not included in the appeal of the orders disapproving–through suspension–the interim or "temporary" rates. We read the language of § 37–3–106(d) (see fn. 2) as providing for a separate administrative proceeding from that provided by § 37–3–106(c) (see fn. 1). The "permanent" rate applications continued under the jurisdiction of the PSC for normal investigation and processing while the petition for review as to the orders "suspending" "temporary" rates were before the district court.

■ However, the PSC's rejection of the applications for "permanent" rates still under its jurisdiction and not on appeal through petition for review rendered moot Northern's appeal from the denial of applications for interim rates. This mootness existed because there remained before the PSC no rate filing to be in part placed into effect; the permanent rate and interim rate applications were inseparably coupled.

■ When a reviewing court has notice of facts showing that issues on appeal are moot, it will dismiss the appeal. *Belondon v. State*, Wyo.1963, 379 P.2d 828; and *Cheever v. Warren*, 1952, 70 Wyo. 296, 249 P.2d 163. Appellate courts, including trial courts in an appellate role, will not render decisions which cannot be carried into effect. Courts will not consume their time deciding moot cases; no controversy will exist and courts will not decide cases to arise in the future. *State v. Jones*, 1945, 61 Wyo. 350, 157 P.2d 993. It is unnecessary to consider other issues as set out by the parties.

Affirmed.

ROONEY, Justice, concurring in the result only.

The majority opinion "goes around the bush" in reaching its result. In doing so, it gives indication of deciding the issue presented in appellants' appeal of another case now pending before us and in which we have not had the benefit of briefs or arguments by the parties.

This case should be decided on the one simple issue of whether or not the trial court's action in dismissal of the appeal of the petition for review of the action by the Public Service Commission (hereinafter referred to as PSC) was proper. Other aspects of the matter need not, and should not be considered.

Appellants filed their applications or tariffs with the PSC proposing new rates (hereinafter referred to as permanent tariffs) pursuant to § 37–3–106(c), W.S.1977;[1] and pursuant to that section, the PSC *suspended* the effective date of the new rates pending an investigation and/or hearing thereon.

Appellants also filed with the PSC, pursuant to § 37–3–106(d), W.S.1977,[2] a request (hereinafter interim request) for permission to place the permanent tariffs into effect

immediately, subject to refund should ultimately they be denied. Section 37–3–106(d), W.S.1977 makes such request "subject to the commission's approval." It does not provide for *suspension* of them, and, indeed, a "suspension" would be superfluous in view of the interim nature of the requests and their effectiveness being conditioned on the suspension of the permanent tariffs.

Appellants here appeal the propriety of the action taken by the district court in dismissing a petition to review the PSC order *suspending* the effectiveness of the tariffs presented under the *interim* request. The district court action here appealed from was taken *after* the PSC entered a subsequent order which did not *suspend*, but which *rejected* the request. In other words the dismissal was a result of the PSC finally taking an action which was in accordance with law.

The appeal was entertained by the district court in the first instance because the PSC action in *suspending* the interim request was without observance of procedure required by law, § 9–4–114(c)(ii)(D), W.S. 1977, 1980 Cum.Supp. When the interim request was *rejected* by the PSC, such action *was* in accordance with law, and the appeal became moot. It was on this basis that the district court dismissed the appeal of the petition for review. Such court said so in so many words:

"The Court finds that a decision upon the merits of this case would be ineffectual as the Public Service Commission *has rejected the application* of the Petitioners for an *.interim rate increase*. Said *rejection supercedes* [sic] *the Respondent's suspension orders* making a challenge to the *Suspension Orders* moot. *Belondon v. State*, 379 P.2d 828, 829 (Wyo., 1963). *Cheever v. Warren*, 70 Wy. 296, 249 P.2d 163, 167 (1952)." (Emphasis supplied.)

In this appeal to us, we should not go beyond that which the district court did.

---

1. See footnote 1 of majority opinion.

2. See footnote 2 of majority opinion.

We need not, and should not, examine other aspects of the PSC order or actions. Whatever reasons the PSC may have had to reject the interim request and/or the permanent tariffs should not be here considered. Those reasons are subject of the other appeal to the district court, and from it to us. We should consider that appeal on its own merits after review of the reasoning of the PSC and of the district court in connection forthwith, and after consideration of the briefs and arguments of the parties there submitted and made.

I concur with the majority opinion in the affirmance of the district court, but only for the reason herein stated.