**NL INDUSTRIES, INC.,**
**Appellant (Defendant),**

v.

**Joe E. DILL, Appellee (Plaintiff).**

**No. 88–16.**

Supreme Court of Wyoming.

March 1, 1989.

---

Kathleen Audette Rideout, Casper and William Bruce Thompson and Michael S. Smith of Shaw, Spangler & Roth, Denver, Colo., for appellant.

Donald L. Painter, Casper, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

Wyoming oil industry retrenchment produced this litigation over employee relocation benefits claimed after subsequent termination. The employee succeeded in the trial court and will again on appeal as presenting contest of the awarded benefits and resulting statutory attorney's fees except for Texas litigative costs.

The relocation reimbursement expense awarded was $13,050.96 for residence sales costs and attorney's fees of $1,769.38 for Wyoming counsel in the present proceedings and attorney's fees of $1,308.50 expended by a Texas attorney to defend an earlier suit brought by NL Industries, Inc. (NL Industries). This claim originally resulted when the employee, Joe E. Dill (Dill),

was transferred from Casper to Powell, Wyoming by his employer, NL Industries. Following transfer and management of the Powell facility from June 1985 through August 1986, Dill was discharged as part of an apparent company retrenchment program. Upon notice of discharge, he submitted a relocation claim for his move to Powell for $13,523.96, which centers the litigative activities that followed. We are presented with a sufficiency of the evidence question involving rejection of the relocation benefit and a legal argument whether those expenses are within the character of employment benefits for which attorney's fees are collectible upon non-payment under W.S. 27–4–104(b).[1]

This court is provided a simplified evidentiary inquiry since a transcript of trial evidence was not secured and the statement of the record under W.R.A.P. 4.03 was accomplished by trial court adoption of the Dill proposal as successful litigant. Consequently, there are no "evidentiary conflicts" and this leaves only a construction of the detailed events for present appellate review. *Feaster v. Feaster*, 721 P.2d 1095 (Wyo.1986). Furthermore, we are not presented with a situation within this appeal to either deny the existence of NL Industries' policy covering an established relocation benefit or to contest the amount initially claimed except as the figure was estimated at termination and then not totally incurred.

The case does present the inquiry confined within the facts and circumstances found to exist, whether the benefit was due to the ex-employee and, if so, were attorney's fees statutorily justified for the collection litigation. NL Industries objects to payment since Dill had not sold his Casper home which was the subject of the relocation benefit by the time his employment was terminated. It is argued that since Dill at the time he incurred the residence sale expense was not an employee of NL Industries, he is not entitled to reimbursement from NL Industries.

Three unquestioned facts are injected into this denial argument. First, following divorce preceding his move to Powell, Dill had an obligation under the divorce decree to sell the Casper house without regard for later transfer. Consequently, it is argued that no damage resulted since the transfer did not cause the residence to be sold. Second, the house was occupied on occasion while Dill was living in Powell by members of his family, disproving damage. Third, after termination, he returned to Casper to sell the house, which is exactly what he had attempted to do before transfer. At that time, he was no longer an employee and his rights, if any, had ended with discharge.

Certain established facts from the settled record are directed to these payment defenses. In 1975, Dill had been employed by NL Industries from out-of-state and was paid moving expenses to Powell. Thereafter, when transferred to Casper, the relocation expenses were again paid. In 1985, while considering a favorable early retirement opportunity, a store manager vacancy in Powell developed after the unexpected death of the existing manager. After initial acceptance of the retirement package on May 23, 1985, Dill was later transferred to Powell to fill the vacancy. When Dill was in Powell, he had to rent an apartment and submitted none of this expense as part of his relocation claim to NL Industries.

Singularly significant within trial court analysis and for our resolution is Exhibit 23, dated December 31, 1985, the written memorandum from a company supervisor to the central office referencing Joe Dill—relocation, which stated:

> As a reminder, Joe Dill, was promised full relocation benefits whenever he disposes of the Casper home, per NL Relocation Policy of June, 1984. This is in connection with Joe's transfer to Powell as District Manager.

1. In this Wyoming proceeding (a prior dismissed action was filed by NL Industries against Dill in Texas), Dill included a claim for malicious prosecution arising out of the Texas activity and for retirement benefits. The trial court ruled against the employee in both regards. Dill brought a cross appeal on the denial of retirement benefits which was dismissed on February 18, 1988 for want of prosecution. W.R.A.P. 5.11.

The authenticity or the authority of the memorandum was not questioned by either record or answered inquiry at oral argument.

When sufficiency of the evidence is questioned, we analyze the facts giving due preference to the trial court.

Our rule is that where the sufficiency of evidence is an issue we uphold the judgment if there is evidence to support it, and in so doing we look only to the evidence submitted by the prevailing party and give to it every favorable inference which may be drawn therefrom, without considering any contrary evidence.

*Hance v. Straatsma,* 721 P.2d 575, 578 (Wyo.1986). See also *Ruby Drilling Co., Inc. v. Title Guar. Co. of Wyoming, Inc.,* 750 P.2d 674 (Wyo.1988); *Eddy v. First Wyoming Bank, N.A.–Lander,* 750 P.2d 294 (Wyo.1988); and *Scott v. Fagan,* 684 P.2d 805, 809 (Wyo.1984).

■ The documentary evidence including the Exhibit 23 memorandum is sufficient to support the trial court's decision that the claimed benefits were promised to Dill in conjunction with his move to Powell and were not thereafter subject to revocation by his unexpected employment termination. Dill's rejection of early retirement was clearly premised upon continued managerial employment in Powell which was the basis for his move. Maintenance of a house in Casper and an apartment in Powell carried significant additional expenses. Furthermore, nothing extrapolated from intent to sell before moving or actual sale after termination to constitute a justified basis for NL Industries to withdraw the agreed benefits.

As the trial court accurately found in decision letter:

The plaintiff worked in Powell, Wyoming for an extended period of time and then was transferred to Casper, Wyoming. On March 27, 1985 the defendant sent notice [to] the plaintiff and all other employees similarly situated offering early retirement under certain specified conditions. The memorandum required acceptance prior to June 15, 1985. The plaintiff met the requirements and on May 23, 1985, submitted his application for retirement. However, prior to the acceptance by the company a position in Powell[,] Wyoming was offered to plaintiff, which he accepted. At that time the plaintiff withdrew his application for early retirement.

As a result of the above referenced job acceptance, the plaintiff was relocated in Powell.

On September 5, 1985, the company again offered early retirement to the plaintiff and all other employees similarly situated. This offer resembled the earlier proposal except that it required acceptance by October 31, 1985. The plaintiff also rejected that proposal.

In late 1986, the defendant was involuntarily terminated as an employee of defendant company.

DECISION. According to the evidence the plaintiff advanced to a grade 10 under the defendant's salary grade scale. On September 1, 1980 the company adopted and published a procedure entitled "Employee Relocation Assistance" and on May 15, 1984 it adopted an amendment to that procedure to cover grade 9 employees and above. The plaintiff claims that he is entitled to the full benefit of the employee relocation assistance plan and in that respect sues for $13,050.96.

The defendant denies liability for the payment of the claimed expenses for the reason that the president had never intended to pay anything beyond a minimal amount for relocation, however, there was nothing in the evidence to illustrate that that intent had ever been conveyed to the plaintiff. The company also asserts that the move was granted to the employee at his request, and for the further reason that plaintiff's residential property had been put on the market prior to the move and was actually sold after the move.

The Court finds that the expenses claimed were in fact expended by the plaintiff; that such expenses fall within the scope of the relocation policy; and

that the move to Powell was at the instance of the company. It is true that the property was listed for sale prior to the move but had not been sold at the time of the move. There is little doubt but what the move increased the need for the sale of the residence particularly in view of the fact that living quarters had to be rented to provide housing for the plaintiff in Powell. The Court also finds that the company, through the supervisor L.A. Smith, agreed to pay full location benefits including the obligation to pay the cost of selling the residential home located in Casper. The Court finds that the company is indebted to the plaintiff for the sum of $13,050.96.

On a sufficiency of the evidence compendium, we affirm the trial court award of the relocation expense as made.

## ATTORNEY'S FEES

■ Also argued as trial court error was the award of attorney's fees on the basis of statutory construction that relocation expenses are not a kind of employee benefit to which the Wyoming statute providing for employee attorney's fees should be applied. W.S. 27–4–104(b) provides:

Whenever an employee who has quit or has been discharged from service has cause to bring suit for wages earned and due, and shall establish in court the amount which is justly due, the court shall allow to the plaintiff interest on the past due wages at the rate of eighteen percent (18%) per annum from the date of discharge or termination, together with a reasonable attorney fee and all costs of suit. Prosecution of a civil action to recover unpaid wages does not preclude prosecution under W.S. 27–4–105.

This law relates to mandatory termination wage benefits and also applies a misdemeanor criminal offense for violation in W.S. 27–4–105. However, neither statutory provision provides a definition of wages. NL Industries argues that a restrictive definition of wages should be applied as defined in W.S. 27–4–201(a)(i) within the minimum wage article, which pro-

vides that " '[w]age' means compensation due to an employee by reason of his employment." Essentially, NL Industries advocates that wages are limited to hourly employees. Conversely, Dill argues for a broader definition of wages as found in W.S. 27–4–501(a)(ii) and (iii) within the collection of unpaid wages article which provides:

"Employee" means any person suffered or permitted to work by an employer; "Wages" means compensation, including fringe benefits, for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis.

■ NL Industries' reliance on the restrictive definition of "wage" in W.S. 27–4–201(a)(i) is misplaced and not applicable to this situation. Their argument finds legislative intent to limit the statutory "wage" definition from the minimum wage article. We perceive that contention is under-inclusive in not assessing the entire statute where a general definition of employee is provided. When the definition of excluded individuals which are not employees for the minimum wage article in W.S. 27–4–201(a)(iv)(C) is read in conjunction with its own confined wage definition, it is necessary to conclude that any such restrictive definition is inapplicable to the broader function of legal fees presented by the present case. W.S. 27–4–201(a)(iv)(C) provides:

(a) As used in this act [§§ 27–4–201 through 27–4–204]:

\* \* \* \* \* \*

(iv) "Employee" includes any individual employed by an employer but shall *not* include:

\* \* \* \* \* \*

(C) Any individual employed in a bona fide executive, administrative, or professional capacity. [Emphasis added.]

This court in *Hurst v. Davis*, 386 P.2d 943, 947 (Wyo.1963) has interpreted that statutory exclusion and held that managers are "employed in a bona fide executive or administrative capacity." The record is clear

and undisputed that Dill was employed as a manager of the Powell store; thus, the narrow definition in W.S. 27–4–201(a)(i) for minimum wage analysis is inapplicable to unpaid employee benefits and attorney's fees.

Undeniably, this action was one for the collection of unpaid wages. We recognize that historically, the predecessor to W.S. 27–4–104 and W.S. 27–4–105 can be traced to initial enactment in 1919 by 1919 Wyo. Sess.Laws ch. 73, and the definitional clause in the collection code came to be in 1971 from the 1971 Wyo.Sess.Laws ch. 156 enactment. However, reading the present statutes in pari materia to synthesize a common purpose and interest, we agree with the cross-reference by annotation, "[a]s to collection of unpaid wages generally, see art. 5 of this chapter." W.S. 27–4–104. See also *Greenwood v. Wierdsma*, 741 P.2d 1079, 1083 n. 2 (Wyo.1987).

We apply a reasonable legislative intent to achieve a consistent effect that the collection definition logically relates to the words "wages earned and due" in the attorney's fee statute. The collection code provision through definition has a clearly expanded concept and scope of compensation including fringe benefits under the wage umbrella for the employee. Consequently, in pari materia approach, the term "wages" as used within W.S. 27–4–104 is the same as "wages" defined in W.S. 27–4–501(a)(iii), and the employee protected by the attorney's fee statute is the employee suffered or permitted to work by W.S. 27–4–501(a)(ii).

 Our attorney's fees inquiry does not yet end since NL Industries has two more objections to all or part of the claimed attorney's fees of $3,077.88, which amount is not contested and clearly, in any regard, not unreasonable. The first objection is that if the definitional section of W.S. 27–4–501 does apply to the attorney's fee statute, relocation cost reimbursement is not a fringe benefit "whether the amount is determined by time, task, piece, commission or other basis" in accord with W.S. 27–4–501(a)(iii). While the argument provides evidence of thoughtfulness and ingenuity,

it lacks real world persuasion. Direct compensation is the money paid for employment, and fringe benefits are the ancillary considerations of a material nature which include medical insurance, retirement programs, stock purchase plans, annual and sick leave, good lighting, coffee hours, and all other similar results of employment which serve the personal interests of the employer and may further include cars, housing, expense accounts and use of credit cards. See *Panhandle Eastern Pipe Line Co. v. Smith*, 637 P.2d 1020, 1025 (Wyo.1981), including as "tangible fringe benefits" the following: "a stock purchase plan, health insurance, investment credit matching stock ownership plan, group life insurance, and a qualified retirement pension plan * * * *" and *Hobbs v. Lewis*, 159 F.Supp. 282, 286 (D.D.C.1958). The Arizona Court of Appeals in *J.H. Welsh & Son Contracting Co. v. Arizona State Tax Commission*, 4 Ariz.App. 398, 420 P.2d 970, 974 (1966), aff'd. 102 Ariz. 443, 432 P.2d 455 (1967) simply defined "fringe benefits" in relation to insurance, pension, and vacation funds as:

> "Fringe benefits" are payments made to various trust funds in addition to the normal "straight" or "conventional" pay that the employee receives in hand on payday, puts into his pocket and spends. Since the end of World War II the practice has arisen not only in Phoenix but throughout the United States of adding to these base payments the additional fringe payments.

Another definition of "fringe benefits" that is pertinent provides:

> Side benefits which accompany or are in addition to a person's employment such as paid insurance, recreational facilities, profit-sharing plans, paid holidays and vacations, etc. Such benefits are in addition to regular salary or wages and are a matter of bargaining in union contracts.

Black's Law Dictionary 601 (5th ed.1979). Reimbursement for relocation expense is, in its very nature, within the broad character of employee fringe benefits where provided by the employer. See *Lull v. C.I.R.*, 434 F.2d 615 (9th Cir.1970), employer's re-

imbursement for relocation expenses is compensation to employees; *Horizon Corp. v. Weinberg,* 23 Ariz.App. 215, 531 P.2d 1153, 1156 (1975); *Shelor v. Shelor,* 683 S.W.2d 647, 649 (Mo.App.1984), overruled on other grounds sub nom. *Giedinghagen v. Giedinghagen,* 712 S.W.2d 711 (Mo.App.1986); and 3 Employment Coordinator (Research Ins. Am.) ¶ B–18,906 (1989). Authority cited to the contrary lacks persuasion as unrealistically oppressive for a broad and easily utilized definition within general knowledge and common acceptance of both industry and labor.

■ The second objection lodged by NL Industries is to the payment of $1,308.50 expended by Dill for employment of a Texas attorney. After Dill's employment was terminated and he filed a relocation claim, NL Industries undertook a litigative resolution by filing a Texas declaratory judgment action to authenticate non-liability for the relocation claim. Dill fought off that confrontation because the Texas court lacked jurisdiction over him. Dill then instituted the present proceeding in Wyoming where he lived and NL Industries was doing business. Reluctantly, based on statutory provision and stare decisis, we agree with NL Industries' objection no matter what the equities might otherwise be.

The challenged Wyoming statute of W.S. 27–4–104(b) is clear and specifically stated. W.S. 27–4–104(b) relates to an employee who *"has cause to bring suit * * * [as* providing for allowance] *to the plaintiff * * * [for] a reasonable attorney fee."* [Emphasis added.]

It has been a continuous and firmly entrenched rule in this jurisdiction that attorney's fees are awarded only if there is either statutory authority or a specific contractual provision. In this case, lacking contractual provision, the only opportunity for recovery by the employee is pursuant to the beneficial provisions, if any, of a statute. Recognizing and honoring the legislative prerogative to establish when non-contractual attorney's fees are collectible, we will not stretch the provision enacted to include legal fees for defense of a Texas proceeding brought as a separate suit where Dill was emplaced as a responding defendant. Lacking a cross appeal on malicious prosecution, we reverse for deletion of attorney's fees entailed by his defense of the Texas litigation.

"It is an established proposition that 'the intention of the legislature must primarily be determined from the language of the statute itself, and not from conjectures aliunde. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning. This principle is to be adhered to notwithstanding the fact that the court may be convinced by extraneous circumstances that the legislature intended to enact something very different from that which it did enact.' "

*State ex rel. Fawcett v. Board of County Com'rs of Albany County,* 73 Wyo. 69, 273 P.2d 188, 196–97 (1954) (quoting *Farmers–Kissinger Market House Co. v. City of Reading,* 310 Pa. 493, 165 A. 398, 400 (1933)). The statute is clear, unambiguous, and dispositive; thus, we will not interpret the statute through rules of construction to seek further legislative intent. See *Wyoming Ins. Dept. v. Avemco Ins. Co.,* 726 P.2d 507 (Wyo.1986) and *Adobe Oil & Gas Corp. v. Getter Trucking, Inc.,* 676 P.2d 560 (Wyo.1984).

Affirmed, except remanded to delete award of Texas attorney's fees; costs of appeal which may include attorney's fees are awarded to appellee.