**WYOMING INSURANCE DEPART-MENT, Appellant (Respondent),**

v.

**AVEMCO INSURANCE COMPANY, Appellee (Petitioner),**

**Colonial Penn Insurance Company, Appellee (Intervenor).**

No. 86–92.

Supreme Court of Wyoming.

Oct. 10, 1986.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen and Sylvia Lee Hackl, Sr. Asst. Attys. Gen., for appellant.

George E. Powers, Jr. of Godfrey, Sundahl & Jorgenson, Cheyenne, for appellee Avemco Ins. Co.

Julie Nye Tiedeken of Southeast Wyoming Law Office of Rodger McDaniel, Cheyenne, for appellee Colonial Penn Ins. Co.

Curtis B. Buchhammer and Ward A. White of Guy, Williams, White & Argeris, Cheyenne, for amicus curiae Nationwide Mut. Ins. Co. and Nationwide Mut. Fire Ins. Co.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This is an appeal from a district court order reversing and vacating an order of the insurance commissioner which found Avemco Insurance Company in violation of § 26–3–127(b), W.S.1977. The only question we are asked to decide is whether the district court erred in reversing the order of the insurance commissioner.

We find no error and, therefore, affirm.

Avemco is a direct writer of insurance authorized to do business in the State of Wyoming. As a direct writer, Avemco sells insurance to citizens of Wyoming directly from its corporate offices located outside the state rather than through agents located within Wyoming. Avemco retains only one agent within the state who serves solely as a countersigning agent. Pursuant to §§ 26–3–127(a) and 26–3–129, W.S.1977,[1] the agent signs and keeps a record of all policies issued by Avemco in Wyoming. For these services, Avemco pays the agent a commission of one-half of one percent of the premiums paid by Wyoming customers.

On February 19, 1985, the insurance commissioner issued a notice and order to show cause to Avemco in which it was alleged that Avemco was not paying its countersigning agent in accordance with § 26–3–127(b), which provides as follows:

"The insurer shall pay to the countersigning agent a commission of not less than five percent (5%) of the entire premium, when paid, on the policy or contract, or twenty-five percent (25%) of the total commission, when paid, whichever is less. This provision does not prohibit payment by the insurer and receipt by the agent of a larger commission for services performed or to be performed in relation to the policy or contract, if so agreed between the agent and the insurer."

At the hearing before the insurance commissioner, Avemco argued that the statutory language provides for payment to the countersigning agent in one of two ways. The agent is to be paid a commission of five percent of the entire premium on the policy or 25% of the total commission paid, whichever is less. Avemco asserted that it pays no commissions other than to the countersigning agent, and thus the agent receives 100% of the commission paid. Because 100% of the commission amounts to

---

1. Section 26–3–127(a) provides:
 "Except as provided in W.S. 26–3–128, no authorized insurer shall make, write, place or cause to be made, or place any policy, duplicate policy or contract of insurance of any kind, upon persons, property or risks resident or located in this state, except through its appointed and licensed agents resident in this state and any one (1) of whom shall countersign the policy, duplicate policy or contract."
 Section 26–3–129 provides:
 "The countersigning agent shall keep a record of each policy he countersigns pursuant to W.S. 26–3–127 and 26–3–128 in the manner provided by W.S. 26–9–137 [§ 26–9–129]."

less than five percent of the entire premium, Avemco contended that it had satisfied the statutory requirements.

The insurance department responded by claiming that the "25% of the total commission" language was intended to apply only when commissions are paid to an agent within the state to produce business. Because Avemco pays no agents within the state to produce business but pays an agent only to countersign policies, the insurance department contends that the "25% of the total commission" language is inoperative, and Avemco must pay the agent "5% of the entire premium."

The insurance commissioner found Avemco's payments to be "less than the [statutory] minimum fee." Adopting the insurance department's interpretation of § 26–3–127(b), the insurance commissioner held that because Avemco pays no commission other than to its countersigning agent, it in effect pays no commission within the meaning of the statute and must, therefore, calculate its payment on the basis of five percent of the entire premium paid.

Avemco filed a petition for review in district court on July 17, 1985. Thereafter, Colonial Penn Insurance Company sought and received permission to file a petition for review on the ground that it was adversely affected by the insurance commissioner's interpretation of § 26–3–127(b).

In an order filed February 25, 1986, the district court found the insurance commissioner's interpretation of § 26–3–127(b) erroneous as a matter of law. Given that the parties stipulated to the fact that "a commission" is paid to the countersigning agent in the amount of one-half of one percent of the premium, the district court found the insurance commissioner's conclusion that no commission is paid within the statutory meaning unsupportable. Having acknowledged that a commission is paid, the court then concluded that pursuant to the statutory language, Avemco could pay either five percent of the premium or 25% of the commission. Because one-half of one percent is .125% of the premium and is thus less than five percent of the total premium, the district court found that Avemco's payments to the countersigning agent satisfied the requirements of § 26–3–127(b).

On appeal, the insurance department contends that the insurance commissioner's order should not have been reversed by the district court, because it was supported by substantial evidence, was within the scope of his authority, and was not arbitrary, capricious, or an abuse of discretion.

 The standards governing review of agency decisions are well established. As the insurance department points out, when reviewing an agency decision, we give no special deference to the district court's determination but instead review the matter as though the appeal were directly to this Court. *State Board of Control v. Johnson Ranches, Inc.,* Wyo., 605 P.2d 367 (1980); *Trout v. Wyoming Oil and Gas Conservation Commission,* Wyo., 721 P.2d 1047 (1986). We examine the entire record to determine if there is substantial evidence to support an agency's findings, and if there is, we will not substitute our judgment for that of the agency. *Trout v. Wyoming Oil and Gas Conservation Commission,* supra. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it may be less than the weight of the evidence but cannot be contrary to the overwhelming weight of the evidence. *Big Piney Oil & Gas Company v. Wyoming Oil and Gas Conservation Commission,* Wyo., 715 P.2d 557 (1986).

 In the present case, the insurance commissioner had before him the following stipulated facts:

"1. That AVEMCO Insurance Company is a direct writer of aviation insurance and is authorized to sell insurance within the State of Wyoming.

"2. AVEMCO sells insurance in Wyoming directly from the corporate and regional offices and does not have any agents within the State of Wyoming, except its statutory countersignature agent.

"3. AVEMCO has retained [an agent in] Cheyenne, Wyoming, as its countersigning agent and *pays her a* countersigning *commission* of 0.5% of the total annual policy premium.

"4. [The agent] performs no services as such for the company except acting solely as a countersigning agent. In the event she were to be asked a question by an AVEMCO insured or asked to perform services by an AVEMCO insured, she would have to refer the inquiry directly to AVEMCO's offices.

"5. A dispute has arisen between the Department of Insurance and AVEMCO regarding whether or not AVEMCO is complying with § 26–3–127(b) W.S. * *.

"6. AVEMCO is a direct writer and as such pays no commissions, *except the commissions paid to the countersigning agent.* * * *

\* \* \* \* \* \*

"8. If the Insurance Department's interpretation of the statute were to prevail, AVEMCO would have to pass on the increased costs of retaining a Wyoming countersigning agent (or 5% of premiums paid under its policy) to the Wyoming insureds by increase in its premiums of at least 5%. * * *

"9. For the policy year beginning September, 1984 AVEMCO had 283 policy holders who paid a total premiums of $243,918. Accordingly, the countersigning agent under the present compensation provisions receives approximately $1,220 annually. If the Department's position were to prevail, the countersigning agent would receive approximately $12,-200 for signing the same 283 policies." (Emphasis added.)

Despite the clear stipulation of the parties that Avemco pays a "commission" to its countersigning agent, the insurance commissioner apparently found that Avemco pays no "commission" within the meaning of § 26–3–127(b). Despite the clear language of the statute allowing payment of *either* five percent of the premium *or* 25% of the commission, *whichever is less,*

the insurance commissioner held as a matter of law that "when no *production* commission is paid the minimum commission paid to a countersignature agent *shall be* the sum of 5% of the total premium." (Emphasis added.) We are unable to find any support in the record for the insurance commissioner's holding.

■ Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, we do not resort to rules of statutory construction. *Thomson v. Wyoming In-Stream Flow Committee,* Wyo., 651 P.2d 778 (1982). Neither this Court nor the agency charged with administering the statute has a right to look for and impose another meaning.

In the present case, the language of the statute is plain and unambiguous. It provides two mechanisms for payment to a countersigning agent—a commission of five percent of the entire premium or 25% of the total commission, whichever is less. In addition, the statute provides that the insurer is not prohibited from paying a greater commission than that provided for by statute. Because this language conveys a clear and definite meaning, the insurance commissioner was not entitled to look for and impose a different meaning, nor was he entitled to read words into the statute. We agree with the district court that the insurance commissioner's finding that the minimum payment to the countersigning agent must be five percent of the total premium when no production commission is paid goes beyond the stipulated facts and the plain meaning of the statute. Section 26–3–127(b) provides quite clearly for payment to a countersigning agent on the basis of "the total commission." The words "total commission," when given their ordinary meaning, mean the whole commission. The statutory language is in no way limited to those circumstances in which a commission is paid to an agent for producing business in Wyoming. As the district court stated:

"The stipulated facts are that a commission is, in fact, paid to the countersigning agent in the amount of 0.5% of the premi-

um. This is, in fact, a commission. 'Commissions' are defined by Ballentine's Law Dictionary to be 'fees or compensation which are usually computed and allowed, for services rendered, on a percentage basis.'"

Section 26–3–127(b) clearly provides for payment to a countersigning agent on the basis of either five percent of the entire premium or 25% of the total commission, whichever is less. Avemco pays a commission to its countersigning agent in the amount of one-half of one percent of the premium. Twenty-five percent of this commission (one-half of one percent of the premium) is 0.125% and is, therefore, less than five percent of the total premium paid.

For the reasons stated above, we are unable to find substantial evidence in the record to support the insurance commissioner's findings. We, therefore, affirm the district court's order.