810 P.2d 1242

**Richard James CARPENTER,**
Claimant–Appellant,

v.

**ARKANSAS BEST CORPORATION,**
Respondent–Appellee.

No. 11943.

Court of Appeals of New Mexico.

Oct. 30, 1990.

Certiorari Granted Dec. 6, 1990.

John R. Polk, Clara Ann Bowler, Albuquerque, for claimant-appellant.

Robert Bruce Collins, Albuquerque, for respondent-appellee.

## OPINION

BIVINS, Chief Judge.

Worker appeals the Workers' Compensation Division's (WCD) disposition order awarding him 75% permanent partial disability, contending the workers' compensation judge (WCJ) erred in (1) failing to award worker total permanent disability; (2) determining 84% of pre-injury wages is comparable wages or salary; and (3) failing to require employer to pay worker's attorney fees. Since worker suffered compensable injuries on February 7, 1987, the transient provisions of the Workmen's Compensation Act apply. *See* NMSA 1978, §§ 52-1-1 to -69 (Orig.Pamp. & Cum.Supp. 1986) (Interim Act); *Strickland v. Coca–Cola Bottling Co.*, 107 N.M. 500, 760 P.2d 793 (Ct.App.1988). We affirm.

We summarize the carefully drawn decision.[1] The WCJ found worker suffered a work-related accidental injury while driving a truck for employer (he received extensive burns to his body in a vehicle accident). He was temporarily totally disabled from the date of the accident, February 7, 1987, until March 13, 1988, when he reached maximum medical improvement. As of the latter date, worker sustained a permanent partial disability to the extent of 75%. Worker is unable to return to his former

---

1. While separately stating and numbering each finding, *see* SCRA 1986, 1–052(B)(1)(b), the findings are organized by issues, with the description of the issue shown as a caption, followed by the findings relating to that issue.

job as a truck driver but is able to perform the job of dispatcher at an annual wage of $28,500. He is not totally disabled. After adding the benefits worker will receive for his permanent partial disability to the wage he is able to earn, worker can earn 84% of his pre-injury wages or salary. The WCJ found that worker does not need vocational rehabilitation to restore him to suitable employment. Employer paid benefits, including temporary total disability, from the date of the accident to August 7, 1988, and presumably all medical costs incurred to date (only future medical was awarded).

## I. *Permanent Total Disability*

Worker's argument that the WCJ erred in not finding permanent total disability is apparently twofold. First, he contends that the "comparable wage" provision of the Interim Act means that post-injury earnings must be equal to pre-injury wages. Second, even assuming that a comparable wage need not be an equal wage, claimant argues that the WCJ's finding that claimant can perform the job of dispatcher at an annual wage of $28,500 is not supported by substantial evidence. The first subissue is legal, the second factual.

### A. Whether Comparable Wage Means Equal Wage

■ Section 52–1–24 of the Interim Act defines permanent total disability as "a permanent physical impairment to a workman resulting by reason of an accidental injury arising out of and in the course of employment whereby a workman is *wholly unable to earn comparable wages or salary*" (emphasis added). Claimant asserts that a plain meaning reading of the Interim Act must lead the court to define comparable wages as post-injury wages equivalent or equal to pre-injury wages. We disagree.

In a recent opinion, this court had occasion to discuss the formula for determining permanent total disability under Section 52–1–24 and to apply it. *See Kincaid v. WEK Drilling Co.,* 109 N.M. 480, 786 P.2d 1214 (Ct.App.1989). While that case did not expressly discuss the meaning of "comparable wages or salary," it clearly demon-

strates that comparable wages need not be equal wages. In *Kincaid,* the worker was able to earn a post-injury wage amounting to more than 85% of his pre-injury wage. This court also acknowledged an unspecified value that was added to the 85% for a clothing discount and a percentage of gross profits the worker was entitled to receive at his post-injury job. We affirmed the hearing officer's determination that the worker was able to earn a comparable wage, even though it was not necessarily equal to his pre-injury wage.

Worker attempts to distinguish *Kincaid* by arguing that the worker in that case, unlike claimant, was only 10% rather than 75% impaired and had an actual post-injury job. We find these arguments unpersuasive for the reasons discussed later in parts I(B) and II of this opinion.

We conclude the legislature, in utilizing the phrase "comparable wages or salary" in Section 52–1–24, did not intend that post-injury wages or salary necessarily be equal to pre-injury earnings. In *Peterson Properties, Del Rio Plaza Shopping Center v. Valencia County Valuation Protests Board,* 89 N.M. 239, 549 P.2d 1074 (Ct.App. 1976), we had occasion to define "comparable" as relates to real property valuations.

"The word 'comparable' is defined as 'capable of being compared (with); worthy of comparison,' (Webster's New International Unabridged Dictionary, Second Edition), and thus must necessarily include dissimilarities as well as similarities." *Department of Public Works, Etc. v. Chicago Title & Trust Company,* 408 Ill. 41, 53, 95 N.E.2d 903, 910 (1950).

*Id.* at 243, 549 P.2d at 1078. We believe that definition appropriate here.

We have considered worker's reference to the Federal Coal Mining Health and Safety Act of 1969, which employs the phrase "comparable work." While cases such as *Echo v. Director, Office of Workers' Compensation Programs,* 744 F.2d 327 (3d Cir.1984) make clear that disparate salaries may make jobs noncomparable, that case does not stand for the proposition that salaries have to be equal. If anything, *Echo* lends support to our holding that

"comparable" means "similar" as opposed to "equal."

Accordingly, we conclude that the WCJ did not err by finding worker could earn a comparable wage, even though his post-injury wage capacity was not equal to his pre-injury wages.

## B. Substantial Evidence Issue

The WCJ found:

22. Beginning March 14, 1988, Claimant is not totally permanently disabled. From March 14, 1988, Claimant has a permanent physical impairment, has reached maximum medical improvement and is able to earn a wage comparable to that earned when injured, taking into account partial disability benefits for which Claimant may be entitled. Claimant is able to earn a wage of $548.07 per week, to which would be added $223.97 per week if he were adjudged partially disabled (compensation rate multiplied by percentage of impairment), for a total of $772.04 per week. This is 84% of the pre-disability wage.

Worker contends these findings lack support by substantial evidence. We disagree.

■ The whole record review standard applies in appeals from workers' compensation cases decided by the WCD. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 127, 767 P.2d 363, 366 (Ct.App.1988). Weighing the credibility of live witness testimony is not permitted by the reviewing court under whole record review. *Id.* The court must, however, canvass all the evidence bearing on a finding or decision, favorable or unfavorable, to determine if substantial evidence exists to support the result. *Id.* at 128, 767 P.2d at 367. After reviewing the evidence, the court must determine if there is "evidence for a reasonable mind to accept as adequate to support the conclusion reached." *Id.* Applying the whole record standard of review, we conclude that the findings challenged by worker are supported by substantial evidence.

■ Relying on *Brown v. Safeway Stores, Inc.*, 82 N.M. 424, 483 P.2d 305 (Ct.App.1970), worker argues that once he introduces evidence as to his age, edu-cation, training, and general physical and mental capacity, the burden rests with employer to show worker is employable. Employer argues that one who seeks relief under a statute has the burden of proving he comes within its terms. *See Baca v. Bueno Foods*, 108 N.M. 98, 766 P.2d 1332 (Ct.App.1988). Moreover, employer says that under *Kincaid* and *Strickland* worker bears the burden of proving he is wholly unable to earn comparable wages. Whether or not those cases change the burden as set forth in *Brown*, we need not decide. Assuming worker is correct that *Brown* applies, both sides met their respective burdens.

Worker presented evidence that he was limited to unskilled clerical jobs where he could change position frequently so as to avoid irritating his skin. He presented further evidence that a starting wage for those types of jobs would be between $3.35 per hour and $5 per hour. Testimony also existed that worker could not work an eight-hour day five days a week.

Employer presented testimony that worker was capable of performing the job of dispatcher with employer if some adjustments were made for worker to be mobile to deal with burn areas that may cause him discomfort. Employer also provided testimony that worker could work an eight-hour day five days a week if the above adjustments were made for him. There was further testimony that worker would be able to alternate sitting or standing as frequently as he wished in order to accommodate his burn injuries.

There was testimony that the salary range for a dispatcher was minimum wage for entry level dispatchers up to $35,000 to $45,000 per year for experienced fleet managers, and the starting salary for a dispatcher with employer was $28,000 to $28,-500. The supervisor of dispatchers for employer testified that in all probability he would have hired worker as a dispatcher if a position were available.

After reviewing the above evidence, we conclude that there was substantial evidence to support the workers' compensa-

tion judge's finding that worker could perform the job of dispatcher at an annual wage of $28,500. While it is true that much of the evidence about worker's ability to work as a dispatcher for $28,500 is controverted, a whole record review "does not contemplate or permit weighing the credibility of live witness testimony by the reviewing court." *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. at 127, 767 P.2d at 366. Consequently, we affirm the WCJ's finding that claimant could perform the job of dispatcher at $28,500 per year.

■■■ Worker also argues that evidence concerning a dispatcher job with employer is insufficient because there was no evidence to show that the job was available to worker at any time. Assuming that job availability is a proper consideration in determining permanent total disability under Section 52-1-24, *see* 2 A. Larson, *Workmen's Compensation Law* § 57.61(a) (1989); *Northwest Carriers, Inc. v. Industrial Comm'n*, 639 P.2d 138 (Utah 1981); but *cf. Strickland v. Coca-Cola Bottling Co.*, 107 N.M. at 502, 760 P.2d at 795, worker is in no position to complain.

First, the burden rests with worker to show reasonable efforts to secure suitable employment. *See* Larson, *supra*, § 57.61(d); *Roach v. Industrial Comm'n*, 137 Ariz. 510, 672 P.2d 175 (1983) (in determining loss of earning capacity, two-part test involves (1) what employment is reasonably available; and (2) whether claimant could reasonably be expected to perform, considering his physical capabilities, education, and training). Worker points us to no evidence showing that he made any attempt to secure suitable employment.

Second, there was substantial evidence for the WCJ to find that the dispatcher's job was available and would have been offered to worker, had he been willing to return to work. Worker's supervisor testified that he would have offered the job to worker. There was also evidence that on July 6, 1988 worker's attorney wrote the vocational rehabilitation specialist for employer, "Please do not take any further steps in this matter or contact Mr. Carpenter directly again." In a later letter, the attorney wrote, "[W]e are through playing these 'rehabilitation' games. It is time to address the workmen's compensation issue."

Worker argues that application of the principle of waiver should not apply since he did not know of the dispatcher opening. It would be easy for the WCJ to infer that it did not matter whether worker had knowledge. If he was not interested in rehabilitation, he probably was not interested in any job that rehabilitation would produce. Moreover, if the vocational assistant contacts between employer and worker were stopped, worker can hardly rely on his own lack of effort with job replacement to argue unavailability of suitable employment. Accordingly, we affirm the WCJ's findings.

## II. *Eighty–Four Percent as Comparable Wage*

■■ In *Kincaid*, we affirmed a hearing officer's finding that the worker was able to earn a comparable wage where the evidence showed he would earn in excess of 85% of his pre-injury wage after considering an anticipated bonus and clothing discount in his new job. We did not, however, fix a definite percentage to determine comparability. In that case, we said,

> Although the statutory definition is based generally on an impairment of earning power theory, it expressly requires a comparison between actual wages at the time of injury and post-injury earning capacity. It provides a clear beginning point for the hearing officer's analysis but requires comparison with a more theoretical element. The theoretical element affords the hearing officer flexibility.

*Id.*, 109 N.M. at 485, 786 P.2d at 1219. We concluded in *Kincaid* that the findings established the hearing officer considered the important factors that enter into a determination of whether the worker was capable of earning a comparable wage. The findings in the case before us indicate the WCJ did likewise.

We decline in this case to establish a definite percentage. To do so would de-

prive the fact finder of the flexibility discussed in *Kincaid,* which we believe is compatible with legislative intent. "One of the purposes of the Workmen's Compensation Act is to assist injured workers by restoring them to suitable employment where they are unable, by reason of an accidental injury, to return to their former jobs." *Garcia v. Schneider, Inc.,* 105 N.M. 234, 237, 731 P.2d 377, 380 (Ct.App.1986). To require 100% of pre-injury wages, as worker urges, would not further that purpose.

In what he refers to as the "regressive effect" of requiring a comparison of anything less than 100% of pre-injury earnings, worker argues that approximations favor the less seriously impaired while discriminating against the more severely impaired worker. As an example, he contends that if he had been only 10% permanently partially disabled, his post-injury wage (earnings plus disability benefit) would have been only 63% of his pre-injury wages or salary, and he would have qualified for total permanent disability. The fallacy in worker's computation is that he maintains as a constant the amount he is able to earn after reaching maximum medical improvement, while reducing the benefits for partial disability. Obviously, this will always reduce the total of the post-injury wages or salary plus partial disability benefits. One would expect in most situations that an injured worker with a lesser percentage of partial disability would earn more than a worker with a greater degree of disability. So, as the degree of partial disability increases, earning capacity decreases. In worker's case, however, he had "transferable skills applicable to other employment," as the WCJ found, which made him capable of earning a substantial post-injury salary or wage. That, coupled with a 75% partial disability benefit, made his post-injury wages comparable to his pre-injury earnings. We do not view this as discriminatory.

Finally, in his reply brief, worker argues for the first time that a "standardless" rule of flexibility raises constitutional questions of vagueness and due process. Aside from the fact that worker cites no authority to support that claim, we do not consider arguments made for the first time in a reply brief. *See Doe v. City of Albuquerque,* 96 N.M. 433, 631 P.2d 728 (Ct.App.1981).

We affirm the WCJ's finding that worker was able to earn a comparable wage.

### III. *Attorney Fees*

Worker claims the WCJ erred in failing to require employer to pay the attorney fees awarded him. He does not challenge the amount, only who is to pay.

■ A. Worker claims that employer should be required to pay his fees under Section 52–1–54(C)(2), which allows an exception when "employer acted in bad faith with regard to handling the injured workman's claim and the injured workman has suffered economic loss as a result thereof." The WCJ found, "Claimant suffered no economic loss * * *." Worker does not challenge this finding. In fact, he does not indicate if proof of economic loss was offered. Without economic loss, there can be no recovery of attorney fees under this subsection. *See Sanchez v. Wohl Shoe Co.,* 108 N.M. 276, 771 P.2d 984 (Ct.App. 1989) (Section 52–1–54(C)(2) specifically requires a finding of economic loss).

■ B. Worker also relies on Section 52–1–54(C)(3), which provides that worker may recover reasonable attorney fees "where an employer without reasonable basis denies that an injury occurred and the workman prevails on that issue and is awarded compensation."

The parties address this issue based solely on the pleadings. Worker argues that, since employer denied the injury without reasonable basis, it should have been required to pay his attorney fees. Employer contends the denial in its answer was prompted by worker's inclusion of "neurological" injuries, and that the denial of these injuries was not unreasonable, particularly since worker later withdrew any claim based on that type of injury.

Worker requested a finding that employer, without reasonable basis, denied an injury occurred. Although the WCJ made

specific findings with respect to employer's good faith handling of the claim and that worker suffered no economic loss, he did not make a specific finding as to the denial of injury without reasonable basis. Worker claims that the lack of a finding raises doubt or ambiguity as to whether the WCJ considered the issue and urges us to remand for entry of findings. Where a party has the burden of proof on an issue and requests a finding on that issue, which is refused, the legal effect of the refusal is a finding against that party. *Kincaid v. WEK Drilling Co.* Notwithstanding the lack of a finding on this specific issue, we cannot say the WCJ failed to consider worker's claim for payment of attorney fees under this issue; therefore, we reject worker's request to remand. We review to determine if substantial evidence supports denial of payment of worker's attorney fees under Section 52–1–54(C)(3). We hold it does.

In his claim, worker described the nature of his injury as "1st and 2nd degree burns and three closed rib fractures on the left side. *Blacking out spells, loss of consciousness.*" (Emphasis added.) Employer argues it denied this paragraph only because it did not recognize the portion relating to blacking out spells and loss of consciousness. Arguably, a fair reading of the entire answer pleading might bear this out. In a separate defense, employer asserted that some or all of the claims made by worker did not occur as a result of the accident.

Employer contends that it was not until January 23, 1989, three and one-half months after its answer was filed, that it learned for the first time that worker had abandoned any claim for neurological injury. At the deposition of worker's primary physician, worker's counsel advised that no claim was being made for neurological problems. "He had those predating his accident." Following that deposition, employer's attorney wrote to worker's counsel confirming the discussion at the deposition and clarifying that employer was not denying the burn injuries. In that letter, counsel for employer wrote,

Inasmuch as you have withdrawn the issue of neurological deficits from the case, I wish to make it clear that ABF is not denying that Mr. Carpenter sustained burn injuries as alleged in your complaint on February 7, 1987. The denial of injury goes only to neurological injury, i.e., black outs [sic], and since that issue has been abandoned by Mr. Carpenter, the denial of that injury by ABF is no longer germane.

I trust this letter will clarify ABF's position with respect to Mr. Carpenter's accidental injuries.

The trial in this proceeding took place on June 29, 1989; therefore, worker knew for a little more than three months that there was no denial by employer of the occurrence of the injury.

The denial of the entirety of an allegation, where a defendant appears to concede a portion of those allegations as true, is contrary to SCRA 1986, 1–008(B) (denial shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, he shall specify so much of it as is true and material and shall deny only the remainder) and SCRA 1986, 1–011 (signature of attorney to pleading constitutes certificate there is good ground to support it). As noted by J. Walden, *Civil Procedure in New Mexico* ch. 5(c), at 110 (1973) (footnote omitted),

> Defendant may specifically deny all or part of any one or more allegations of the complaint or he may generally deny all of the allegations of the complaint, bearing in mind the ethical obligations imposed by Rule 11 if he does so. In any event, 'Denials shall fairly meet the substance of the averments denied.'

An employer may be at risk under Section 52–1–54(C)(3) when it denies in its entirety an allegation that an injury occurred, when intending only to deny a portion. Nevertheless, in this case, given the fact that employer advised worker's attorney as soon as it became aware that the portion of the injuries claimed that had been objected to had been abandoned, the WCJ could find that employer acted reasonably. At the

very least, employer acted unreasonably in denying the burn and other physical injuries. We might be inclined to remand to allow the WCJ to apportion the attorney fees; however, we believe that unnecessary for two reasons.

First, worker has made no showing that any of its efforts at trial or leading up to trial were to establish the occurrence of an injury. Indeed, the only real issue was that of disability and related matters.

Second, the phrase "denies that an injury occurred" under Section 52-1-54(C)(3) may be read to include not only the pleadings in the proceeding but also the conduct of the employer from the time of the accidental injury. We believe that the legislature was equally interested in the prompt action by an employer and its insurance carrier in taking prompt care of the needs of an injured worker in practice as it was in relieving the worker of the task of proving an essential element of his claim, the denial of which had no reasonable basis. Thus, we read Section 52-1-54(C)(2) to include not only unreasonable denial of the injury in the findings but also in the conduct of the employer and its carrier in practice.

We conclude the WCJ could find employer's denial or partial denial under these circumstances was reasonable.

For example, what an employer states in its pleadings may have less significance than what action it takes. An employer may very well admit in its answer that a worker suffered severe injuries but refuse to provide medical care, temporary disability benefits, or rehabilitation. We believe one of the purposes of Section 52-1-54(C)(3) is to require payment of attorney fees in those situations where the employer stonewalls a claim without a reasonable basis, forcing a worker to fight every inch of the way for every benefit. This is not, however, illustrated by the case at hand. A denial in a pleading that an injury occurred may be indicative of such stonewalling; however, there may be other factors to be considered.

Based upon a review of the WCJ's findings of fact in this case, it appears that employer commenced paying temporary to- tal benefits from the date of the accident to August 7, 1988 at a rate of $298.63 every two weeks and continued those payments until August 7, 1988. Since the WCJ found worker had reached maximum medical improvement on March 14, 1988, it would appear employer may have overpaid. There is a finding that employer and its insurer are entitled to a credit for compensation benefits previously paid, and this may include the several months following the date of maximum medical improvement that total temporary benefits were paid when worker was found to be only 75% partially disabled. Even if employer did not overpay, it appears that temporary total benefits were paid as required. Additionally, the findings implicitly indicate that employer and its carrier paid all medical benefits, and the evidence reflects an effort to provide vocational rehabilitation, which was terminated only at the instance of worker. The actions described on the part of employer and its insurer hardly speak of the denial that an injury occurred.

For these reasons, we affirm the WCJ's determination with respect to attorney fees.

The judgment below is affirmed.

IT IS SO ORDERED.

DONNELLY, J., concurs.

APODACA, J., concurs in part and dissents in part.

APODACA, Judge., concurring in part and dissenting in part.

I agree with the majority on the attorney fees issue but respectfully dissent on the issue of whether 84% of worker's pre-injury wages constituted a comparable wage under NMSA 1978, Section 52-1-24(A) of the Interim Act. Although I agree with the majority that *comparable* does not necessarily mean *equal*, I disagree that the workers' compensation judge's (judge) determination on the comparable wage issue is affirmable on the basis of the record before us. The record is absent of any particularized findings that would satisfy me that a proper determination was made.

Additionally, in view of the legislature's failure to provide us with a definition or other guidance with respect to the underlying legislative intent in the use of the term "comparable" in Section 52–1–24(A), I believe that adoption of definitive guidelines by us, as a reviewing court, is required. Doing so would afford structured guidance to fact finders on the specific issue of comparability under the Interim Act.

Absent such a set of factors or criteria, I foresee fact finders groping in the dark at the expense of both the worker and employer, in an attempt to determine whether a worker is able to earn a comparable wage after injury. Finding myself in the minority, I am not prepared to suggest at this time what these guidelines should be, only that this court should establish the criteria on which the judge could properly base its determination, before this court can consider the judge's decision under whole record review. Otherwise, I am not satisfied that the *before* and *after* wages are "capable of being compared" or "worthy of comparison," if I may borrow the definitions used by the majority.

In my judgment, the majority has improperly defined the issue as one involving only a substantial evidence review. I do not so view the issue. Instead, to me, the issue involves policy considerations that we, as a reviewing court, should implement by establishing criteria for fact finders, to guide them in their determinations on the issue of comparability. In this appeal, the record does not reflect any factors or other "relevant evidence" considered by the judge in concluding worker was capable of earning a comparable wage after the injury, aside from the judge's bald, conclusory statement that worker was "able to earn a wage comparable to that earned when injured."

As noted previously, in enacting Sec. 52–1–24(A), the legislature failed to provide us with a definition of "comparable" wage. The majority essentially concludes from this fact that the intent was to afford the fact finder flexibility in making a determination. I, on the other hand, view such failure as, not only an opportunity, but as a mandate, to formulate a set of criteria or factors under which the fact finder can make a comprehensive and meaningful determination concerning comparability. Otherwise, what is the standard (other than the generally accepted standard of whole record review) by which we measure the correctness of the fact finder's determination? In the absence of such guidelines, this court would be called upon to review the fact finder's determination only under the limited umbrella of substantial evidence review. In my view, this would result in perpetual and rubber stamp affirmances, a result that could be avoided if criteria were to be adopted. I agree with what I understand to be the majority's position that a cut-off point on the basis of strict percentages should not be controlling. Without consideration of other important factors, selection of a cut-off point would prove not only arbitrary, but shortsighted.

The majority relies on *Kincaid v. WEK Drilling Co., Inc.*, 109 N.M. 480, 786 P.2d 1214 (Ct.App.1989), in affirming the judge's conclusion that 84% of pre-injury wages was comparable under Section 52–1–24(A). I, however, do not view *Kincaid* as controlling the disposition of this appeal. In *Kincaid*, this court was not called upon to decide the specific question of what percentage of pre-injury earnings constituted a comparable wage. There are two underlying reasons why I believe reliance on *Kincaid* is inappropriate.

First, in *Kincaid*, the worker's post injury earnings included not only a salary representing 85% of his pre-injury earnings, but participation in a percentage of the gross profits, as well as a clothing discount at the store where he worked. *Kincaid* held that the clothing allowance and the profit sharing earnings were properly included in the formula for determining comparability. "[I]t was not error to consider either element in attempting to determine earning capacity because each element is relevant in identifying the salary Kincaid could command." *Id.* at 485, 786 P.2d at 1219. These two additional wage factors had the potential effect of raising the worker's percentage of pre-injury earnings

to a higher level than the fixed 84% in this appeal.

Partly for those reasons (one can reasonably assume), at oral argument, worker's counsel in *Kincaid* apparently conceded, or did not vigorously dispute the fact, that 85% of pre-injury wages could be deemed a comparable wage under the facts of that case. I believe it would be fair to conclude that the panel in *Kincaid* might have focused more attention on this issue had worker's counsel insisted that the panel review the comparability of wages with greater scrutiny. Possibly, *Kincaid* too, might have been called upon to adopt the factors I propose be adopted here, had it not been for the apparent concession made at oral argument. Since "other factors" were considered important in *Kincaid*, I suggest it is inappropriate for the majority to place reliance on that case to support its disposition in this appeal, which is factually distinguishable.

Second, our holding in *Kincaid* relied on the fact that the judge there looked at particularized facts in arriving at a determination. "These findings establish that the hearing officer considered important factors that enter into a determination of whether Kincaid was capable of earning a comparable wage." *Id.* at 486, 786 P.2d at 1220. Quoting from *Kincaid*, the majority has reaffirmed *Kincaid's* requirement that the judge consider a "theoretical element" affording the judge flexibility. The majority then concludes, without adequate substantiation in the record, that the judge considered "the important factors" that enter into the determination of whether worker was capable of earning a comparable wage. The majority next proceeds to place its stamp of approval on the judge's determination by relying on a substantial evidence review. I agree that is the correct standard of review. However, I suggest that, absent the criteria or factors under which the judge's determination can be measured, the whole record review is less meaningful.

The judge here made no particularized findings to establish the comparability of the pre-injury and post-injury wages. My

review of the record disclosed that the only evidence focusing directly on the comparable wage issue was offered through the testimony of Connie De Herrera, a certified rehabilitation counselor. Ms. De Herrera presented evidence of dispatcher and dental technician positions that she felt would suit worker's physical limitations. She was asked if, based on her education and experience, she had an opinion whether the salaries that those positions commanded were comparable to worker's pre-injury salary. Ms. De Herrera testified that she thought they were comparable. On cross examination, however, she qualified her testimony by stating that she did not know the legal definition of "comparable wage." She added that she understood a comparable wage was a wage that was "consistent" with worker's pre-injury wage.

Even given Ms. De Herrera's lay definition of the term "comparable", I do not agree that the judge's determination of comparability was based on the factors alluded to in *Kincaid*. Without definitive criteria, I, for one, cannot state unequivocally that worker's post-injury earnings were "consistent" with his pre-injury earnings, to paraphrase Ms. De Herrera's terminology. Without specific guidelines, I submit it would be difficult for the fact finder to make meaningful findings. Instead, the fact finder has absolutely nothing to "latch onto" in arriving at a determination.

Additionally, the judge in this appeal did not directly confront the issue of whether an amount representing 84% of pre-injury wages was comparable to the wages worker was earning before the accident. In Finding of Fact 22, the judge found that "[c]laimant has a permanent physical impairment, has reached maximum medical improvement and is able to earn a wage comparable to that earned when injured[.] * * * This is 84% of the pre-disability wage." He based this decision solely on the suggested salary that worker could make as a dispatcher and his anticipated compensation for partial disability. In *Kincaid*, we spoke of the fact finder making a determination "based not only on actual post-injury earnings *but all other relevant evidence.*" *Id.* at 484, 768 P.2d at

1218. (emphasis added). *Kincaid* also concluded that "[t]he phrase used by the legislature in Section 52–1–24 indicates an intent to permit the fact finder to consider a wide variety of evidence." *Id.* Yet, in this appeal, I found nothing in the record to indicate that "important factors" and other "relevant evidence" were considered by the judge on the comparability issue.

In stating that "[*Kincaid*] did not expressly discuss the meaning of 'comparable wages or salary,'" the majority acknowledges that *Kincaid* did not reach the issue we are asked to decide in this appeal. Yet, despite this acknowledgment that *Kincaid* did not set forth the demarcation or line of separation for comparability of wages, the majority nevertheless relies on that case to conclude that comparability was achieved, in determining that the judge's findings were supported by substantial evidence. Absent adoption of express criteria or factors, I respectfully disagree with the majority's analysis.

In conclusion, I propose that the proper disposition of this appeal would require the establishment of the necessary criteria or factors to guide the fact finder in determining comparability. Additionally, once establishing such criteria, we should remand the case, with instructions that the judge enter particularized findings based on the established factors, in support of his determination on the issue of comparability.