810 P.2d 1221

**Richard James CARPENTER,**
**Claimant–Petitioner,**

v.

**ARKANSAS BEST CORPORATION,**
**Employer–Respondent.**

**No. 19546.**

Supreme Court of New Mexico.

April 17, 1991.

John R. Polk, Clara Ann Bowler, Albuquerque, for claimant-petitioner.

Robert B. Collins, Albuquerque, for employer-respondent.

## OPINION

SOSA, Chief Justice.

Richard James Carpenter filed his petition for writ of certiorari seeking our review of the court of appeals' decision[1] affirming the Workers' Compensation Division's disposition order. In that order the Workers' Compensation Judge (WCJ) found that a post-injury potential wage plus partial disability benefits totaling 84% of petitioner's pre-injury wages amounted to comparable wages for purposes of the definition of "permanent total disability" in NMSA 1978, Section 52–1–24 (Cum.Supp. 1986).[2] By finding comparability, the WCJ denied petitioner's claim that he was permanently totally disabled under the statute.

We granted the petition for writ of certiorari. In doing so, we asked the parties to present briefs on two questions: (1) the

---

1. *Carpenter v. Arkansas Best Corp.,* 112 N.M. 22, 810 P.2d 1242 (1990) (to be published together with this opinion).

2. This section is part of the "Interim Act" enacted by our legislature in 1986. N.M.Laws, ch. 22,

§ 4. The section was replaced in 1987 with another statutory definition of "total disability". *See* NMSA 1978 § 52–1–25 (Repl.Pamp.1987) (N.M.Laws 1987, ch. 235, § 11).

meaning of "comparable wage" in workers' compensation statutes and case law in other jurisdictions, and (2) their arguments as to how the record in this case shows that the WCJ made or failed to make particularized findings of comparability.

Having considered those briefs, having conducted our own independent research and analysis, having considered the majority and dissenting opinions of the court of appeals and the record supporting those opinions, we reverse the court of appeals' decision and remand the case to the WCJ with instructions to enter a new judgment determining that Carpenter is totally disabled within the meaning of the statute.

■ On the issue of whether the WCJ correctly arrived at monetary figures for pre- and post-injury wages and the 84% figure, we agree with the majority of the court of appeals that substantial evidence supports the WCJ's order on these points. Thus we do not review the questions raised by the parties on appeal—e.g., whether petitioner was given a fair opportunity to take a job as a dispatcher, or whether his attorney's letter to Ms. de Herrera telling her to "stop playing rehabilitation games," etc.—unfairly deprived petitioner of a job opportunity, or whether the WCJ improperly took this speculative job opportunity into account in computing the post-injury wages petitioner would be able to earn. There was clearly substantial evidence in the record to support the WCJ's order on these points. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 127, 767 P.2d 363, 366 (Ct.App.), *cert. denied*, 109 N.M. 33, 781 P.2d 305 (1988).

■ Where we differ both with the majority and with Judge Apodaca, who dissented in the court of appeals, is on the question of the WCJ's finding of comparability. We cannot accept the WCJ's ruling that 84% of pre-injury wages is "comparable" to pre-injury wages. We agree with the parties that there simply is no case on point although there are cases and statutes that use the concept of comparability, but not in the same context. *See, e.g., Echo v. Director, Office of Workers' Compensation Programs*, 744 F.2d 327 (3d Cir.1984)

(noncomparable salaries may make *jobs* noncomparable); *Smith v. North Dakota Workers' Compensation Bureau*, 447 N.W.2d 250, 254 (N.D.1989) ("substantial" rehabilitation occurs when claimant recovers to within 10% of pre-injury earning capacity); *see also* La.Rev.Stat.Ann. § 23:1221(3)(a) (West 1985 & Cum.Supp. 1991) (supplemental earnings benefits based on employee's inability to earn wages equal to 90% or more of pre-injury wages).

We agree with Carpenter that his post-injury wages plus partial disability benefits, totaling $772.04 per week are not comparable to his pre-injury wage of $921.54 per week. Put differently, we find that 84% is not "comparable" within the contemplation of this statute.

■ The question whether post-injury wages plus benefits are or are not comparable to pre-injury wages is a question of law in the interpretation of the statute (§ 52–1–24). In the abstract, determining whether something is or is not comparable to something else might involve factual determinations, but in the case of this statute there are no factual issues that need to be resolved. The legislature set no guidelines or criteria for determining the issue of comparability.

Since we have nothing in the statute to tell us what kind of factual determination is proper here, we hold that comparability is a question of law. We further hold that comparable means "substantially equal" or "equivalent" in light of what we think the statute is trying to accomplish.

The statute says that if a worker is "wholly unable" to earn comparable wages, he or she is totally disabled. What does "wholly unable" mean? What if he or she is only partially unable? One would think that in that situation the worker would be partially disabled and entitled to a partial disability benefit. But the premise of the statute is that the worker is *already* receiving a partial disability benefit, which must be added to his or her post-injury wages (actually, wage-earning ability) and then compared with his or her pre-injury

wages. If the two figures are not "comparable," then the worker is considered totally disabled under the statute.

The purpose of this statute is evidently to get the worker as close as possible to the pre-injury wage. If the post-injury wage plus partial disability benefit does not accomplish this, then the statute contemplates that, in lieu of the partial disability benefit, the worker is to receive a total disability benefit. This will then be added to his or her post-injury wage. While the new total might not equal the pre-injury wage, the legislation has done the best that can be done, and the worker is not entitled to anything further.

In the present case, the pre-injury wage was $921.54 per week. The post-injury wage was $548.07 per week, to which must be added the partial disability (75%) benefit of $223.97 per week, for a total of $772.04 per week. The question is whether this latter figure is comparable to $921.54 per week. The difference is $149.50 per week, or about $7,500 per year (or, about 16%). An annual income of something over $39,-000 is not comparable to an annual income of $47,000.

Under the 1986 Interim Act partial disability derives from American Medical Association tables of functional impairment and not from some percentage extent to which the worker is unable to perform the tasks of his or her work or otherwise earn money commensurate with age, education, training and experience. Likely section 52–1–24 is meant to introduce wage-earning ability into the equation. Further, the section would appear to encourage a disabled worker to earn what he or she can, with prospects for "comparable wages" with the aid of compensation benefits, rather than to do nothing and rely on a maximum of two-thirds of the worker's pre-injury wages or the average in the state, whichever is less.

By whatever rationale the legislature sought to define comparability, however, we hold that 84% of pre-injury wages is not comparable. Accordingly, we reverse the court of appeals and remand the case to the WCJ with instructions to enter judgment in Carpenter's favor determining that he is totally disabled.

IT IS SO ORDERED.

RANSOM and MONTGOMERY, JJ., concur.