In the Matter of the Worker's Compensation Claim of:

David ADAMS, Appellant (Petitioner),

v.

STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).

No. 97–335.

Supreme Court of Wyoming.

Feb. 25, 1999.

Donald L. Painter, Casper, for Appellant.

William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

* Chief Justice at time of expedited conference;

GOLDEN, Justice.

Appellant David Adams appeals the district court's affirmance of a hearing examiner's order denying his claim for an additional permanent disability award based upon loss in earnings.

We reverse and remand for a determination of award.

## ISSUES

Adams presents the following issue for our review:

Whether, as a matter of law, Appellant's pre-injury wage of $6.25 per hour is comparable to his post-injury earning capacity of $5.57 per hour.

Appellee Workers' Compensation Division (Division) believes the issue is:

An injured worker received worker's compensation benefits for his physical impairment but the hearing examiner denied additional benefits for vocational disability because the worker is capable of earning a wage comparable to his pre-injury wage.

Was the hearing examiner's decision supported by substantial evidence and in accordance with law?

## FACTS

Adams suffered a back injury on August 6, 1995, after which he received certain benefits for medical, hospital and other health care related expenses as well as temporary total disability and permanent partial physical impairment of 5%. At the time of the injury, Adams earned $6.25 per hour as a cook. After the injury, Adams was unable to continue as a cook and applied for a loss of earnings capacity or vocational award.

The Division referred Adams to Pamela Mills, a physical therapist at the Wyoming Performance Center, for a functional capacity examination. Adams was examined on November 21, 1996, and found to be physically capable of performing work in the sedentary category as defined by the U.S. Department of Labor. The Division also referred Adams to Roger Campbell, M.A., of CRA Managed Care, for a vocational evaluation.

retired November 2, 1998.

He reported that Adams could perform the functions necessary tó obtain jobs such as gatekeeper, hotel clerk, or an assembler of small products. Mr. Campbell contacted employers in the Casper area and determined that such jobs were available and paid an average wage of $5.57 per hour.

The Division denied benefits on the basis that the vocational evaluation stated that Adams had no vocational loss due to his injury. A hearing was held before the Office of Administrative Hearings. The hearing examiner found that Adams' own testimony and that of the evaluators indicated that Adams could return to a job as a desk clerk with a hotel or motel, which were types of jobs listed in the evaluation as available or which would soon be available; that Adams' pre-injury wage was $6.25 per hour; and the evaluation showed that the possible post-injury wage was $5.57 per hour. Based on this, the hearing examiner concluded that Adams had failed to meet his burden of proof that he was unable to return to work at a comparable or higher wage and his claim for permanent partial disability was denied. Adams appealed that denial to the district court, which affirmed the administrative action by the hearing examiner. Adams appeals that order.

## DISCUSSION

It is apparent from the findings of fact and conclusions of law that the hearing examiner's focus was on determining whether Adams was able to return to work. Adams contends, however, that the sole issue is whether a post-injury wage that is 89% of one's pre-injury wage is "comparable" to the pre-injury wage, and he contends that this presents a question of law. He points out that in his particular case the wage difference between $6.25 and $5.57 equals $27,-765.76 if he were to work until he retires. He argues that such a significant amount easily dispels any notion that the two wages are comparable.

At the time of the injury, the applicable statute stated:

§ 27–14–405. **Permanent partial disability; benefits; schedule; permanent disfigurement; disputed ratings.**

(a) and (b) Repealed by Laws 1994, ch. 86, § 3.

(c) Renumbered as (k) by Laws 1994, ch. 86, § 2.

(d) Repealed by Laws 1994, ch. 86, § 3.

(e) Renumbered as (m) by Laws 1994, ch. 86, § 2.

(f) An injured employee suffering an ascertainable loss may apply for a permanent partial impairment award as provided in this section.

(g) An injured employee's impairment shall be rated by a licensed physician using the most recent edition of the American Medical Association's guide to the evaluation of permanent impairment. The award shall be paid as provided by W.S. 27–14–403 for the number of months determined by multiplying the percentage of impairment by forty-four (44) months.

(h) An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:

(i) The injured employee is because of the injury, **unable to return to employment at a comparable or higher wage than the wage the employee was earning at the time of injury;**

(ii) An application for permanent partial disability is filed not before three (3) months after the date of ascertainable loss or three (3) months before the last scheduled impairment payment, whichever occurs later, but in no event later than one (1) year following the later date; and

(iii) The employee has actively sought suitable work, considering the employee's health, education, training and experience.

(j) The disability award under subsection (h) of this section shall be payable monthly in the amount provided by W.S. 27–14–403 for the number of months determined by adding the number of months computed under this subsection as follows: . . . .

Wyo. Stat. Ann. § 27–14–405 (Michie 1997) (emphasis added).

Permanent partial disability is defined in Wyo. Stat. Ann. § 27–14–102(a)(xv) (Michie 1997) as:

(xv) "Permanent partial disability" means the economic loss to an injured employee, measured as provided under W.S. 27–14–

405(j), resulting from a permanent physical impairment; ...

The term "comparable or higher wage" is not defined in the act. The Division contends that the hearing examiner correctly ruled that Adams did not meet his burden of proof that a minimal wage reduction of sixty-eight cents is not a comparable wage. Adams contends that by showing the wages were not equal, equivalent, or similar, he met his burden of proof.

■ Under our statutory interpretation rules, this Court applies the plain meaning of the statute unless found to be ambiguous. *Wright v. State ex rel. Wyoming Workers' Safety and Compensation Div.*, 952 P.2d 209, 213 (Wyo.1998). The plain meaning of "comparable" according to the dictionary is "capable of or suitable for comparison," and the word "comparison" is defined as "the representing of one thing or person as similar to or like another." Merriam Webster's Collegiate Dictionary 234 (10th ed. 1994). The Division contends that if the legislature intended that "comparable" mean "equal" it would have said so; however, our review indicates that the legislature has used the term "comparable" in seventy-seven different statutes. In one statute, the legislature defines a "comparable replacement dwelling" as "functionally equivalent" to a prior dwelling, Wyo. Stat. Ann. § 16–7–102(iii)(D) (Michie 1997), and in another defines a "comparable business" as "the same lines of insurance, same kinds of insurance, similar policy limits, similar types of risk and similar quality of business." Wyo. Stat. Ann. § 26–45–104(ii)(H) (Michie 1997). These examples indicate that the legislature has used "comparable" to mean something other than exactly equal; however, the use of terms "functionally equivalent" and "similar" are not particularly helpful without context. Black's Law Dictionary informs us that "comparable accommodations," "comparable sales" and "comparable worth" are legal terms that require an analysis to determine whether the subjects in question are sufficiently similar to be regarded as substantially equal in order to determine a particular rental amount, fair market value, or wage rate for male- and female-dominated jobs. Black's Law Dictionary 281–82 (6th ed.1990).

■ In resolving whether the wages are comparable, Adams showed that the pre-injury and post-injury wage figures were not the same, and in doing so, there is no question that Adams showed an "economic loss" as required under the statute. However, the hearing examiner ruled that Adams did not meet his burden of proof. What other evidence would he have shown? On what basis did the Division and the hearing examiner decide that $5.57 per hour is comparable to $6.25 per hour?

The Division urges that whether wages are comparable is a factual determination and our standard of review is whether the hearing examiner's decision is supported by substantial evidence. The New Mexico Supreme Court reversed a lower court's determination that this issue presented a question of fact in *Carpenter v. Arkansas Best Corp.*, 112 N.M. 1, 810 P.2d 1221 (1991). That court stated:

> The question whether post-injury wages plus benefits are or are not comparable to pre-injury wages is a question of law in the interpretation of the statute.... In the abstract, determining whether something is or is not comparable to something else might involve factual determinations, but in the case of this statute there are no factual issues that need to be resolved. The legislature set no guidelines or criteria for determining the issue of comparability.

*Id.* at 1222. The court then determined that because there was nothing in the statute to tell it what kind of factual determination was proper, it would hold that comparability is a question of law. *Id.* It further held "that comparable means 'substantially equal' or 'equivalent' in light of what we think the statute is trying to accomplish." *Id.* The court decided the statute's purpose was to get the worker as close as possible to the pre-injury wage and ruled that a post-injury wage plus disability benefits which was 84% of the pre-injury was not comparable. *Id.* at 1223.

The New Mexico statute differed from the statute in this case because a worker's ability to earn comparable wages was part of the definition of "permanent total disability." In this case, the Division advances no argument as to the purpose of the statute, and we must

assume that its purpose is as straightforward as its plain meaning, that is, a worker is entitled to a permanent disability award based on his economic loss. In light of that purpose, we, too, will hold that "comparable" means "substantially equal" or "equivalent" and decide that wages are only "comparable" if the difference between them is insignificant. In this case, we decide that a post-injury wage which is 89% of pre-injury wage is not a comparable wage in this case primarily because at such a low rate of pay, when every cent counts to purchase the essentials for living, the difference is significant.

It is suggested by the Division that the hearing examiner's decision can be upheld as a determination that Adams was pretending to experience pain and is actually able to accept a position other than those listed in the job evaluation report which would pay him at a comparable or higher wage. We agree that if this were the hearing examiner's ruling, it would be a factual determination requiring our review of whether or not it was supported by substantial evidence. The findings of fact and the conclusions of law, however, mention nothing about finding that Adams was pretending to experience pain while they do make a determination based solely on the availability of jobs close to the pre-injury wage. We would also point out that this was not the basis for the Division's denial, and the Division did not challenge the validity of Adams' injury at the hearing. Accordingly, the basis for the hearing examiner's determination requires that we resolve this appeal as an issue on the meaning of "comparable." We cannot speculate about areas of concern not discussed in the hearing examiner's decision.

The order denying a permanent disability award is reversed and remanded for a determination and entry of award.

THOMAS, Justice, dissenting, with whom TAYLOR, Justice, Retired, joins.

I must respectfully dissent from the opinion of the majority of the Court in this case. One method of amending a statute is to strike a word or phrase, and then insert a different word or phrase. After the majority opinion in this case, Wyo. Stat. Ann. § 27–14–405(h)(i) (Michie 1997) is amended in this way:

(i) The injured employee is because of the injury, unable to return to employment at ~~a comparable~~ an equivalent or substantially equal or higher wage than the wage the employee was earning at the time of injury[.]

Can there be any wonder that I believe the majority of the Court is engaged in judicial legislation in this case? Even though I might feel some sympathy for the result, I am satisfied that the majority approach displays an alarming lack of jurisprudential discipline.

The majority opinion acknowledges that a statute is to be interpreted according to its plain meaning, unless it is determined to be ambiguous, but there is no indication in the majority opinion of any ambiguity that justifies construction of this statute. We summarized the applicable rule of statutory construction in *State ex rel. Wyoming Workers' Compensation Div. v. Bergeron*, 948 P.2d 1367, 1369 (Wyo.1997) (*quoting City of Cheyenne v. Reiman Corp.*, 869 P.2d 125, 127–28 (Wyo.1994)):

"For some forty years, this court has espoused and followed, frequently, the rule that we do not resort to rules of statutory construction and interpretation when the language of a statute is plain and unambiguous. *E.g., Thunder Basin Coal Co. v. Study*, No. 93–45, 1994 WL 2811 (Wyo. Jan. 7, 1994) [866 P.2d 1288 (Wyo.1994) ]; *Wyoming State Tax Comm'n v. BHP Petroleum Co., Inc.*, 856 P.2d 428 (Wyo.1993); *Jackson State Bank v. King*, 844 P.2d 1093 (Wyo.1993); *Hasty v. Hasty*, 828 P.2d 94 (Wyo.1992); *Phillips v. Duro–Last Roofing, Inc.*, 806 P.2d 834 (Wyo.1991); *Vandehei Developers v. Public Serv. Comm'n of Wyoming*, 790 P.2d 1282 (Wyo.1990); *Halliburton Co. v. McAdams, Roux & Assoc.*, 773 P.2d 153 (Wyo.1989); *NL Industries, Inc. v. Dill*, 769 P.2d 920 (Wyo.1989); *Belle Fourche Pipeline Co. v. State of Wyoming, Envtl. Quality Council*, 766 P.2d 537 (Wyo. 1988); *Wyoming Ins. Dept. v. Avemco Ins. Co.*, 726 P.2d 507 (Wyo.1986); *Thomson v. Wyoming In–Stream Flow Comm.*, 651 P.2d 778 (Wyo.1982); *State, ex rel. Fawcett v. Bd. of County Comm'rs of Albany County*, 73 Wyo. 69, 273 P.2d 188 (1954). An

unequivocal corollary of that rule is, if the statute is determined to be plain and unambiguous, the words used are to be given their plain and ordinary meaning. *BHP Petroleum Co., Inc.; Wyoming Game and Fish Comm'n v. Thornock,* 851 P.2d 1300 (Wyo.1993); *Vandehei.*"

"Comparable" is defined in a plain and unambiguous way in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 461 (1993):

1 : capable of being compared: **a:** having enough like characteristics or qualities to make comparison appropriate—usu. used with *with* < differing from steel in some of the circumstances ... but ~ with steel in respect of the necessity for a centralized control—Thorstein Veblen> **b** : permitting or inviting comparison often in one or two salient points only—usu. used with *to* <not too far below Johnsonto be ~ to that master's work—T. S. Eliot> < hot cornbread baked with squash seeds—an Indian delicacy ~ to raisin bread—Willa Cather> 2: suitable for matching, coordinating, or contrasting: EQUIVALENT, SIMILAR < samples of subtlety ... which made most of the ~ performances of the season sound clumsy—Irving Kolodin> <we have information about Arctic regions but lack ~ data for the Antarctic> **syn** see LIKE

The use of "to" in the statute suggests that the applicable definition is that found in the **b** part of the first meaning assigned. Permitting or inviting comparison clearly contemplates a factual approach.

The only synonym for "comparable" suggested by Webster is "like," which is defined at WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1310 (1993). "Like" would fit the conclusion reached in the majority opinion, but in the discussions of the various synonyms for "like" we find the following:

COMPARABLE indicates a likeness on one point or a limited number of points which permits a limited or casual comparison or matching together < the Syrians ... with Arabian coffee, served thick and strong in tiny cups, as a national drink *comparable* to the Englishman's tea— *American Guide Series: R.I.* > COMPARABLE is esp. likely to be used in connection with considerations of merit, standing, rank, or power < neither in military nor industrial terms is China *comparable* to the other three great powers—Vera M. Dean>

The word "comparable" is peculiarly inappropriate to articulate "substantially equal" or "equivalent." The essence of comparable is found in its nuance that suggests the points of comparison will be identified as facts, and it is that very essence that makes the issue of comparability one of fact rather than one of law. By its holding, the majority opinion robs the word of its lexigraphic function. Instead "comparable" now becomes a legal word of art.[1] Even the suggestion that wages are only "comparable" if the difference between them is insignificant is of little utility to the arbiter, who will inevitably conclude that any departure from equality is significant.

In a sophisticated way, the majority opinion invokes persuasive authority to support its holding, but in the process it ignores that cardinal rule of statutory construction that words should be afforded their plain and ordinary meaning. I agree with the contention of the Division that the legislature certainly could, and would, have used the words "substantially equal" or the word "equivalent" if that had been what it intended.

In analyzing what the legislature intended, I must assay a response to the rhetorical question, found on page four of the majority slip opinion, "What other evidence would he [Adams] have shown?" There is a recognized labor market, as demonstrated by this record. A participant in a market is presumed to be a reflective, evaluative person interested in maximizing his demands. Obviously, not all jobs in the labor market are identical, and the economist assumes that an individual will move from one job to another

---

1. **Words of art.** The vocabulary or terminology of a particular art, science, or profession, and especially those expressions which are idiomatic or peculiar to it. For example, in law "Taking the Fifth" means that a person is asserting his or her Fifth Amendment protection against self-incrimination.
BLACK'S LAW DICTIONARY 1605 (6th ed.1990).

whenever the benefits exceed the costs at the margin. Costs and benefits in the market consist of both tangible and intangible factors, and are essentially influenced by the demands that are significant to the individual. In my opinion, the legislature intended that wages would be comparable so long as the differential did not influence the reflective, evaluative person interested in maximizing his demands to move from one position to another. For example, one might prefer to work for some lesser wage as a hotel clerk because the job was less dangerous than, or the working conditions were preferable to, those associated with work as a cook. In any event, I am satisfied that expert opinion evidence could be obtained to assist the finder of fact in making the factual determination as to whether the wages of different jobs are comparable.

While the majority is enamored of the approach taken in New Mexico with respect to application of the word "comparable" in cases such as this, it has ignored a very salient aspect of the decision of the New Mexico court. Carpenter, like Adams, had received an award for permanent partial disability. *Carpenter v. Arkansas Best Corp.,* 112 N.M. 22, 810 P.2d 1242, 1243 (1990), *rev'd,* 112 N.M. 1, 810 P.2d 1221 (1991). The Supreme Court of New Mexico did not compare the pre-injury and post-injury wages, as the majority in this case has done. That court said:

> The post-injury wage was $548.07 per week, to which must be added the partial disability (75%) benefit of $223.97 per week, for a total of $772.04 per week.

*Carpenter v. Arkansas Best Corp.,* 112 N.M. 1, 810 P.2d 1221, 1223 (1991). While the majority opinion reports that Adams received a permanent partial disability benefit of five percent, that money is not accounted for in the comparison of pre-injury wages with post-injury wages. If it were, the two figures undoubtedly would be more comparable, probably falling well within the permissible range of statistical deviation.

Counsel for the Division advises the Court that the Division has adopted an interpretive rule defining "comparable wage" as being at least 80% of the wages paid for the worker's regular employment at the time of injury, but that interpretive rule inevitably must be struck down in light of a rule that, as a matter of law, a post-injury wage of 89% is not comparable. The only permissible way for the definition to be adjusted now is for the legislature to craft its own statute, specifically defining the differential that will be acceptable and not trigger the claim for additional benefits for vocational disability.

Until that should occur, however, I am satisfied that the question of a comparable wage should be treated as one of fact in each case with the burden of proof assigned to the claimant to persuade the finder of fact that the wages are not comparable. I do not see that as an insurmountable burden, but it must address more than the simple monetary wage for the two different jobs. For those reasons, I would affirm the Office of Administrative Hearings in this case.

